SHORT RECORD
NO. 13-3813
FILED 12/17/13

# No. ___

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

IN RE: STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

*Petitioner,*

v.

MARK HALE, TODD SHADLE AND CARLY VICKERS MORSE, ON BEHALF
OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED; ED MURNANE; AND
WILLIAM G. SHEPHERD

*Respondents,*

On Petition for a Writ of Mandamus to the United
States District Court for the Southern District of
Illinois, Case No. 3:12-cv-00660-DRH-SCW,
The Honorable David R. Herndon, Chief Judge,
Presiding

### PETITION FOR WRIT OF MANDAMUS

Ronald S. Safer #6186143
Joseph A. Cancila, Jr. #6193252
James P. Gaughan #6204406
SCHIFF HARDIN, LLP
233 South Wacker Drive, Suite 6600
Chicago, IL 60606

J. Timothy Eaton #0707341
SHEFSKY & FROELICH, LTD
111 East Wacker, Suite 2800
Chicago, IL 60601

Of Counsel:
Sheila L. Birnbaum
Douglas W. Dunham
Ellen P. Quackenbos
QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York  10010

Patrick D. Cloud #06282672
HEYL, ROYSTER, VOELKER & ALLEN
Mark Twain Plaza III, Suite 100
105 West Vandalia Street, P.O. Box 467
Edwardsville, IL 62025

*Counsel for Petitioner State Farm Mutual Automobile Insurance Company*

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Seventh Circuit Rule 26.1, State Farm Mutual Automobile Insurance Company ("State Farm") states that it is a mutual insurance company, with no parent corporation and no corporation owning any stock in it.

The following law firms have represented State Farm in this case:

- Shefsky & Froelich, Ltd.

- Heyl, Royster, Voelker & Allen

- Schiff Hardin, LLP

- Quinn Emanuel Urquhart & Sullivan, LLP

- Skadden, Arps, Slate, Meagher & Flom LLP

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ........................................................................ i

TABLE OF AUTHORITIES ....................................................................... iv

INTRODUCTION ....................................................................................1

RELIEF SOUGHT ...................................................................................4

ISSUES PRESENTED................................................................................4

FACTUAL AND PROCEDURAL BACKGROUND....................................................4

REASONS WHY THE WRIT SHOULD ISSUE .....................................................9

I.      THIS COURT HAS AUTHORITY TO ISSUE THE REQUESTED WRIT ....................9

II.     THE DISTRICT COURT CLEARLY EXCEEDED ITS JURISDICTION
        UNDER *ROOKER-FELDMAN*. ......................................................13

        A.      Plaintiffs' Claim for Damages in the Amount of the Judgment Reversed by
                the Illinois Supreme Court in *Avery* Is Tantamount to a Request to Vacate
                the Illinois Supreme Court's Decision ...................................13

        B.      The District Court Erred in Holding that Plaintiffs Had Alleged An
                Independent Constitutional Injury Not Subject to *Rooker-Feldman* ....................15

        C.      The District Court Erred in Holding that Plaintiffs Were Challenging
                Defendants' Actions in Procuring the *Avery* Judgment, Not the Judgment
                Itself ...............................................................16

        D.      The District Court Clearly Abused Its Discretion in Disregarding the
                Parties' Claims and Contentions in the Illinois Supreme Court............................18

        E.      Plaintiffs' Contention that They Were Injured by the Illinois Supreme
                Court Rules Does Not Save Their Claims from *Rooker-Feldman*'s
                Jurisdictional Bar ....................................................20

        F.      As Numerous Federal Courts of Appeals Have Held, *Rooker-Feldman*
                Bars Relitigation of State Court Denials of Motions to Recuse ...........................21

III.    THE DISTRICT COURT CLEARLY ABUSED ITS DISCRETION IN
        DECLINING TO HOLD THAT *RES JUDICATA* AND COLLATERAL
        ESTOPPEL BAR PLAINTIFFS' CLAIMS ...................................................22

A.    Res Judicata ..........................................................................................................22

B.    Collateral Estoppel..................................................................................................24

IV.    THE DISTRICT COURT CLEARLY ABUSED ITS DISCRETION IN FAILING
TO DISMISS PLAINTIFFS' RICO CLAIMS AS A MATTER OF LAW ......................24

A.    The District Court Manifestly Erred in Holding that State Farm's Mailings
of Its Briefs Can Constitute RICO Predicate Acts and Form a RICO
Pattern ....................................................................................................................24

B.    Plaintiffs' RICO Claims Fail for Lack of Causation ..............................................27

CONCLUSION..................................................................................................................30

# TABLE OF AUTHORITIES

**Page**

## Cases

*ASARCO Inc. v. Kadish*,
490 U.S. 605 (1989)............................................................................11

*Abelesz v. OTP Bank*,
692 F.3d 638 (7th Cir. 2012) .........................................................3, 9, 10

*Adkins v. VIM Recycling, Inc.*,
644 F.3d 483 (7th Cir. 2011) ...............................................................19

*Agnew v. National Collegiate Athletic Ass'n*,
683 F.3d 328 (7th Cir. 2012) ...............................................................15

*Aldridge v. Lily-Tulip, Inc. Salary Retirement Plan Benefits Committee*,
953 F.2d 587 (11th Cir. 1992) ..............................................................26

*Anderson v. Ayling*,
396 F.3d 265 (3d Cir. 2005)..................................................................28

*Avery v. State Farm Mutual Automobile Insurance Co.*,
547 U.S. 1003 (2006)......................................................................7, 10

*Avery v. State Farm Mutual Automobile Insurance Co.*,
746 N.E.2d 1242 (Ill. App. Ct. [5th Dist.] 2001), *aff'd in part, rev'd in part*,
835 N.E.2d 801 (Ill. 2005), *cert. denied*, 547 U.S. 1003 (2006) ...............................4

*Avery v. State Farm Mutual Automobile Insurance Co.*,
835 N.E.2d 801 (Ill. 2005), *cert. denied*, 547 U.S. 1003 (2006) ...................................*passim*

*Balderos v. City Chevrolet*,
214 F.3d 849 (7th Cir. 2000) ...............................................................26

*Beth-El All Nations Church v. City of Chicago*,
486 F.3d 286 (7th Cir. 2007) ...............................................................18

*Bianchi v. Rylaarsdam*,
334 F.3d 895 (9th Cir. 2003) .............................................................11, 22

*Brown v. Bowman*,
668 F.3d 437 (7th Cir.), *cert. denied*, 133 S. Ct. 176 (2012)...........................13, 19

*Caperton v. A.T. Massey Coal Co.*,
556 U.S. 868 (2009)......................................................................15, 29

*Charchenko v. City of Stillwater*,
47 F.3d 981 (8th Cir. 1995) ...............................................................14

*Cheney v. United States District Court for the District of Columbia*,
542 U.S. 367 (2004)............................................................................9

*City of Chicago v. Midland Smelting Co.*,
896 N.E.2d 364 (Ill. App. Ct. 2008) ...............................................23

*Cullen v. State Farm Mutual Automobile Insurance Co.*,
2013 WL 5941377, 2013-Ohio-4733 (Nov. 5, 2013) ......................11

*Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.*,
758 F. Supp. 2d 153 (E.D.N.Y 2010), *aff'd*, 443 F. App'x 582 (2d Cir. 2011).......................25

*Dababnah v. Burnside*,
2000 U.S. App. LEXIS 11342 (4th Cir. May 12, 2000)......................22

*DeGuelle v. Camilli*,
664 F.3d 192 (7th Cir. 2011) ...........................................................27

*Denius v. Dunlap*,
330 F.3d 919 (7th Cir. 2003) ...........................................................19

*Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*,
744 N.E.2d 845 (Ill. 2001) ...............................................................23

*Ellison v. Brock*,
122 F. App'x 519 (1st Cir. 2004) ......................................................21

*Evans v. City of Chicago*,
434 F.3d 916 (7th Cir. 2006), *overruled on other grounds*
*by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013)............................27

*Evans v. City of Chicago*,
689 F.2d 1286 (7th Cir. 1982), *overruled on other grounds*,
873 F.2d 1007 (7th Cir. 1989) ..........................................................27

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,
544 U.S. 280 (2005)....................................................................13, 17

*Fieger v. Ferry*,
471 F.3d 637 (6th Cir. 2006) ...........................................................22

*Frederiksen v. City of Lockport*,
384 F.3d 437 (7th Cir. 2004) ...........................................................12

*Gamboa v. Velez*,
457 F.3d 703 (7th Cir. 2006) ...........................................................26

*Garry v. Geils*,
82 F.3d 1362 (7th Cir. 1996) ...........................................................14

*Gilbert v. Illinois State Board of Education*,
591 F.3d 896 (7th Cir. 2010) ...........................................................16

*Greenberger v. GEICO General Insurance Co.*,
   631 F.3d 392 (7th Cir. 2011) .......................................................................... 11

*Grisanzio v. Bilka*,
   511 N.E.2d 762 (Ill. App. Ct. 1987) ............................................................... 24

*Hay v. Indiana State Board of Tax Commissioners*,
   312 F.3d 876 (7th Cir. 2002) .......................................................................... 19

*Henry v. Farmer City State Bank*,
   808 F.2d 1228 (7th Cir. 1986) ........................................................................ 22

*Highway J Citizens Group v. United States Department of Transportation*,
   456 F.3d 734 (7th Cir. 2006) .......................................................................... 23

*Homola v. McNamara*,
   59 F.3d 647 (7th Cir. 1995) ............................................................................ 12

*Howell v. Supreme Court of Texas*,
   885 F.2d 308 (5th Cir. 1989) .......................................................................... 21

*Hurlbert v. Charles*,
   938 N.E.2d 507 (Ill. 2010) ............................................................................. 24

*Independent Trust Corp. v. Stewart Information Services Corp.*,
   665 F.3d 930 (7th Cir. 2012) .......................................................................... 19

*Jackson v. Motel 6 Multipurpose, Inc.*,
   130 F.3d 999 (11th Cir. 1997) ........................................................................ 12

*Jennings v. Auto Meter Products, Inc.*,
   495 F.3d 466 (7th Cir. 2007) .......................................................................... 26

*Johnson v. City of Kankakee*,
   397 F. App'x 238 (7th Cir. 2010) ............................................................. 19, 24

*Johnson v. Orr*,
   551 F.3d 564 (7th Cir. 2008) .......................................................................... 17

*Kamilewicz v. Bank of Boston Corp.*,
   92 F.3d 506 (7th Cir. 1996) ............................................................................ 16

*Kelley v. Med-1 Solutions, LLC*,
   548 F.3d 600 (7th Cir. 2008) ............................................................. 13, 16, 17

*Kropelnicki v. Siegel*,
   290 F.3d 118 (2d Cir. 2002), *narrowed on other grounds by*
   *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005) ............ 17

*La Salle National Bank v. County Board of School Trustees*,
   337 N.E.2d 19 (Ill. 1975) ............................................................................... 23

*Lathrop v. Juneau & Associates, Inc.*,
   2005 WL 3797706 (S.D. Ill. Apr. 25, 2005) ................................................... 25

*Maple Lanes, Inc. v. Messer*,
    186 F.3d 823 (7th Cir. 1999) ...........................................................14

*In re Marriage of Duggan*,
    877 N.E.2d 1140 (Ill. App. Ct. 2007) .............................................27

*RWB Services, LLC v. Hartford Computer Group*,
    539 F.3d 681 (7th Cir. 2008) ...........................................................29

*Raney v. Allstate Insurance Co.*,
    370 F.3d 1086 (11th Cir. 2004) ..................................................24, 25

*In re Rhone-Poulenc Rorer, Inc.*,
    51 F.3d 1293 (7th Cir. 1995) ..............................................................9

*River Park, Inc. v. City of Highland Park*,
    703 N.E.2d 883 (Ill. 1998) ...............................................................22

*Roger Whitmore's Automotive Services, Inc. v. Lake County*,
    424 F.3d 659 (7th Cir. 2005) ...........................................................26

*Rooker v. Fidelity Trust Co.*,
    263 U.S. 413 (1923)...........................................................................16

*Smith v. Bender*,
    350 F. App'x 190 (10th Cir. 2009)...................................................21

*Taylor v. Federal National Mortgage Ass'n*,
    374 F.3d 529 (7th Cir. 2004) .....................................................14, 17

*Thomas v. Page*,
    837 N.E.2d 483 (Ill. App. Ct. 2005) ...............................................28

*United States v. Vinyard*,
    539 F.3d 589 (7th Cir. 2008) ..............................................................9

*United States v. Pendergraft*,
    297 F.3d 1198 (11th Cir. 2002) ..................................................24, 25

*Wallis v. Fifth Third Bank*,
    443 F. App'x 202 (7th Cir. 2011)......................................................15

*Walsh Construction Co. v. National Union Fire Insurance Co.*,
    153 F.3d 830 (7th Cir. 1998) ............................................................24

*Wilson v. Selma Water Works & Sewer Board*,
    522 F. App'x 634 (11th Cir. 2013).....................................................22

*In re Whirlpool Corp.*,
    597 F.3d 858 (7th Cir. 2010) ............................................................10

## Statutes and Rules

Fed. R. Civ. P. 12(b)(1)......................................................................................4

Fed. R. Civ. P. 12(b)(6)..........................................................................4, 19, 22

Fed. R. Evid. 201(c)(2) ........................................................................19

735 ILCS 5/2-1401 ...............................................................................18

Ill. Const., art. 6, § 3 ...........................................................................28

Ill. Sup. Ct. R. 63 ................................................................................20

18 U.S.C. § 1962 ..................................................................................27

18 U.S.C. § 1962(c) .............................................................................15

18 U.S.C. § 1962(d) .............................................................................15

18 U.S.C. § 1964(c) .............................................................................27

28 U.S.C. § 1257 ..................................................................................13

28 U.S.C. § 1292(b) ...............................................................................9

## Miscellaneous

Press Release, Ill. Supreme Court, The Hon. Lloyd A. Karmeier To Be Sworn
    In To Illinois Supreme Court (Dec. 2, 2004), *available at*
    www.state.il.us/court/Media/PressRel/2004/120204.pdf. ........................................5

## <u>INTRODUCTION</u>

Plaintiffs, who were named plaintiffs and class members in *Avery v. State Farm Mutual Automobile Insurance Co.*, 835 N.E.2d 801 (Ill. 2005), have now brought a putative nationwide RICO class action in federal court, seeking damages of three times the $1.05 billion judgment that was unanimously reversed by the Illinois Supreme Court in *Avery*.  In support of their RICO claims, Plaintiffs allege that Justice Lloyd A. Karmeier's participation in the Illinois Supreme Court's decision in *Avery* "tainted" the proceedings, that State Farm's briefs in *Avery* misrepresented its involvement in Justice Karmeier's election, and that the mailings of those briefs were RICO predicate acts of mail fraud.

The *Rooker-Feldman* doctrine bars the district court from reviewing the judgments of the Illinois Supreme Court, and mandamus is plainly warranted to confine the district court to its lawful jurisdiction.  Plaintiffs' present lawsuit is their sixth attempt to challenge Justice Karmeier's participation in *Avery* based on State Farm's alleged support for his campaign.  In 2005, Plaintiffs unsuccessfully moved three times in the Illinois Supreme Court to disqualify Justice Karmeier, based on substantially the same allegations Plaintiffs now make again in federal court. Plaintiffs then unsuccessfully sought a writ of certiorari in the United States Supreme Court, seeking review of due process issues purportedly raised by Justice Karmeier's participation and State Farm's alleged support for his campaign.  In 2011, Plaintiffs unsuccessfully petitioned the Illinois Supreme Court for post-judgment relief, again based on essentially the same grounds that Plaintiffs urge here as the basis for their RICO claims, including the same purported "new" evidence regarding State Farm's supposed "role in directing and financing [Justice] Karmeier's campaign" that Plaintiffs claim prompted their present Complaint ([2] ¶¶ 9-10, SA3).[1]

---

[1]   The record citations in this Petition are provided in the following formats: Numbers in brack-
*(cont'd)*

The district court's denial of State Farm's motion to dismiss on *Rooker-Feldman* grounds constitutes manifest legal error. As is demonstrated by Plaintiffs' alleged injury here, namely, their loss of the $1.05 billion judgment in *Avery*, Plaintiffs' claims are tantamount to a request to vacate the Illinois Supreme Court's reversal of that judgment. Plaintiffs' RICO claims would also impermissibly require the federal court to conclude that the Illinois Supreme Court erred in failing to disqualify Justice Karmeier. As such, Plaintiffs' present claims are "inextricably intertwined" with the Illinois Supreme Court's judgments. The district court's exercise of jurisdiction is contrary not only to this Court's *Rooker-Feldman* jurisprudence, but also to decisions by seven other United States Courts of Appeals rejecting attempts to relitigate in federal court the disqualification of a state court judge.

The extraordinary circumstances of this case warrant mandamus relief. Continued litigation of the issues of judicial disqualification raised by Plaintiffs' RICO claims does not merely threaten to overturn the judgment of the Illinois Supreme Court in *Avery*, but also will give rise to a serious and impermissible intrusion on matters intrinsic to the Illinois Supreme Court's judicial processes and functioning. Indeed, Plaintiffs have announced that they may depose Justice Karmeier, a sitting justice on that Court. (*See* [149] at 9-10; [154] at 2.) Justice Karmeier faces a retention election in 2014. Thus, the destructive effects of this lawsuit will likely extend to the judicial election process as well. Plaintiffs' allegations of "tainted" deliberations unfairly impugn the integrity not only of Justice Karmeier, whom Plaintiffs name as a participant in the purported RICO enterprise, but of the entire Illinois Supreme Court and the Illinois justice system. The

---

*(cont'd from previous page)*

ets are the docket numbers of documents filed in the district court and available on PACER under the caption *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 3:12-cv-00660-DRH-SCW (S.D. Ill.). Citations to the Required Appendix filed with this Petition begin with the letters "RA_." Citations to the Separate Appendix filed with this Petition begin with the letters "SA_."

district court's re-examination of the issues presented in Plaintiffs' RICO claims will occur only at the cost of much disrespect to the Illinois Supreme Court and in disregard of the principles of comity and federalism that underlie *Rooker-Feldman*.  Routine, end-of-case review can neither prevent nor undo the substantial harms involved in Plaintiffs' serial litigation of these claims.  This is the rare case in which mandamus review is warranted.

The harm to State Farm is also plain and cannot be repaired through a later appeal in this case.  Plaintiffs' claims are of a nature to cause severe reputational damage.  A determination by this Court on a later appeal that jurisdiction is lacking will not repair such harm to State Farm, because the lack of jurisdiction will preclude this Court from addressing merits issues.  Thus, there will be no possibility of correcting of damaging factual and legal errors and obtaining vindication on appeal.  In the exceptional circumstances of this case, a writ of mandamus is appropriate and necessary to "'confine'" the district court "'to the lawful exercise of its jurisdiction.'"  *Abelesz v. OTP Bank*, 692 F.3d 638, 651 (7th Cir. 2012) (citation omitted).

The district court also fundamentally erred in permitting Plaintiffs' RICO mail fraud claims to go forward despite the manifest failure of those claims to satisfy the elements of RICO.  The district court's holding that the service and filing of briefs by mail can constitute RICO predicate acts is profoundly erroneous, inviting a never-ending cycle of litigation whenever a party is dissatisfied with the outcome of a lawsuit.  Plaintiffs' RICO claims also fail, *inter alia*, for the lack of a RICO "pattern" and any causal relationship between the purported predicate acts, Justice Karmeier's non-deciding vote in *Avery*, and the unanimous decision of the Illinois Supreme Court to reverse certification of the nationwide classes and overturn the $1.05 billion judgment in that case.  The district court's patent errors of law as to jurisdiction and as to the sufficiency of the Complaint warrant mandamus relief.

## RELIEF SOUGHT

This Court should issue a writ of mandamus directing the district court to enter an order dismissing Plaintiffs' Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) or, alternatively, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## ISSUES PRESENTED

1.     Whether the district court exceeded its jurisdiction under *Rooker-Feldman*?

2.     Whether the district court clearly abused its discretion in declining to find that Plaintiffs' claims are barred by *res judicata* and collateral estoppel?

3.     Whether the district court committed patent legal error in declining to dismiss Plaintiffs' RICO claims for lack of cognizable predicate acts, any RICO pattern, and proximate and but-for causation?

## FACTUAL AND PROCEDURAL BACKGROUND

**The Proceedings on the Merits in *Avery*** Plaintiffs Mark Hale, Todd Shadle, and Carly Vickers Morse were also named Plaintiffs and class members in *Avery*.  (Compl. [2] ¶¶ 3, 46, SA2,15.) The *Avery* lawsuit was filed in July 1997 in Illinois state court, asserting contract and Illinois Consumer Fraud Act (ICFA) claims based on State Farm's specification of non-OEM parts for the repair of its insureds' automobiles.  *See Avery*, 835 N.E.2d at 810-11.  The trial court certified a nationwide class of some 4.7 million State Farm policyholders, and the class trial resulted in a judgment against State Farm of over $1.1 billion.  *Id.* at 817.  The appellate court affirmed, but reduced the damages award to just over $1.05 billion.  *Avery v. State Farm Mut. Auto. Ins. Co.*, 746 N.E.2d 1242 (Ill. App. Ct. [5th Dist.] 2001).  The Illinois Supreme Court granted State Farm leave to appeal, and the case was argued and submitted on May 14, 2003.  ([2] ¶ 48, SA16.)  Justice Karmeier was elected to the Court on November 4, 2004, and sworn in on December 6,

2004.[2]

On August 18, 2005, the Illinois Supreme Court (with Justice Karmeier participating) ruled unanimously that the trial court had erred in certifying a nationwide class.[3] *See Avery*, 835 N.E.2d at 824, 869.  The majority opinion authored by Chief Justice Mary Ann McMorrow held that variations in State Farm's insurance policies rendered class certification of the contract claim erroneous, *id.* at 824, that the plaintiffs had failed to establish a breach of any of the relevant policy forms, *id.* at 824-30, that none of the policies would be breached by the specification, in itself, of non-OEM parts, *id.* at 825-26, 828-29, and that the verdict could not be upheld with regard to any subclass, given, *inter alia*, the need for "individual examination of hundreds of thousands, if not millions, of vehicles" to determine if the cars had been restored to their pre-loss condition.  *Id.* at 826.  Justices Freeman and Kilbride opined that differences in state contract law rendered a nationwide class unconstitutional, but would have remanded for a determination whether any subclasses were possible.  *Id.* at 869-70, 879.  The Court also unanimously ruled that a nationwide ICFA class should not have been certified because ICFA does not apply to transactions outside of Illinois, *id.* at 855, 880, and unanimously reversed the ICFA judgment against State Farm and the $600 million punitive award.  *Id.* at 863, 880.

**Plaintiffs' Challenges to Justice Karmeier's Participation in *Avery***  Before filing their present Complaint, Plaintiffs challenged Justice Karmeier's participation in *Avery* in five motions or petitions.  Plaintiffs moved twice in the Illinois Supreme Court to recuse Justice Karmeier before the Court's reversal of the *Avery* judgment, and subsequently in a rehearing petition, a petition for

---

[2]  *See* Press Release, Ill. Supreme Court, The Hon. Lloyd A. Karmeier To Be Sworn In To Illinois Supreme Court (Dec. 2, 2004), *available at* www.state.il.us/court/Media/PressRel/2004/120204.pdf.
[3]  Justice Thomas did not participate in *Avery*.

certiorari, and a petition to vacate the judgment.  Like the present Complaint, Plaintiffs' first recusal motion alleged that State Farm contributed to Justice Karmeier's campaign through organizations such as the Illinois Civil Justice League ("ICJL"), the ICJL's political action committee ("JUSTPAC"), the U.S. Chamber of Commerce, and other organizations and corporations whose contributions Plaintiffs theorized were somehow attributable to State Farm.  (*See* [13-10] at 38, 41-44, SA162,165-68.)  As here, Plaintiffs included allegations about the involvement Co-Defendants Ed Murnane and State Farm employee William Shepherd in the ICJL ([13-10] at 47-49, SA171-73) and about State Farm's supposed "connections" to Justice Karmeier's campaign ([13-10] at 46, SA170).  Plaintiffs also submitted exhibits ([13-17]; [13-18] at 1-64), including an affidavit of Douglas Wojcieszak ([13-17] at 7-11, SA146), who is named in Plaintiffs' present Complaint in connection with emails purloined from the trash of State Senator David Luechtefeld, Justice Karmeier's campaign manager, which emails Plaintiffs assert support their RICO claims.  ([2] ¶ 67-68, SA20.)

In its January 31, 2005 opposition, State Farm argued, *inter alia*, that State Farm itself did not contribute to Justice Karmeier's campaign, that there was no "plausible basis or factual support for Plaintiffs' contention that State Farm was somehow the moving force behind every contribution made by any civic or business organization to which State Farm ha[d] any connection whatsoever," and that Plaintiffs had "shown no knowledge on the part of Justice Karmeier of any purported connections between contributions and State Farm that would create a grounds for disqualification."  (*See* [13-11] at 11, 17, SA198,202.)  Plaintiffs' response again asserted that State Farm and its "agents" had "work[ed] hard to elect" Justice Karmeier and that Justice Karmeier supposedly had "extremely close ties" with State Farm through Ed Murnane.  (*See* [13-12] at 6, 8, SA204,206.)  On March 16, 2005, the Illinois Supreme Court denied Plaintiffs' mo-

tion without opinion.  ([13-3] at 1, SA114.)  Justice Karmeier did not participate in that decision.

On March 22, 2005, Plaintiffs filed a motion for reconsideration, seeking to have Justice Karmeier decide whether to recuse himself and attributing even more contributions made by others to State Farm.  ([13-14] at 43-63, SA234; [13-15] at 1-47, SA240.)  On May 20, 2005, the Illinois Supreme Court vacated its March 16 Order, stating that disqualification was "a decision exclusively within the determination of the individual judge" and that Justice Karmeier had "advised the court that he w[ould] not disqualify himself."  ([13-3] at 2, SA115.)  Accordingly, the Court found that Plaintiffs' motion was moot and denied it a second time.  (*Id.*)

After the Illinois Supreme Court reversed the $1.05 billion judgment against State Farm, Plaintiffs moved for rehearing, urging as the sole ground that Justice Karmeier's participation was improper and violated due process.  ([13-16] at 16-28, SA260.)  Plaintiffs again alleged that State Farm, Mr. Shepherd, and Mr. Murnane were involved in organizations (e.g., ICJL, JUST-PAC, and the U.S. and Illinois Chambers of Commerce) that supported Justice Karmeier's campaign and that State Farm had supported the campaign with "massive sums of money," both directly and indirectly.  ([13-16] at 19-20, SA263-64.)  The Illinois Supreme Court denied rehearing.  ([13-3] at 80, SA116.)

**Plaintiffs' Petition for Certiorari**  Plaintiffs then challenged Justice Karmeier's participation in *Avery* in a certiorari petition to the United States Supreme Court.  ([13-16] at 51-69, SA273.)  Plaintiffs' petition asserted that State Farm's alleged support for Justice Karmeier's campaign and Justice Karmeier's participation in *Avery* violated due process.  ([13-16] at 52, SA274 & *passim*; *see also* [13-16] at 108-126, SA303.)  State Farm opposed the petition, which was denied on March 6, 2006.  *See Avery v. State Farm Mut. Auto. Ins. Co.*, 547 U.S. 1003 (2006); ([13-3] at 81-82, SA117-18.)

**Plaintiffs' 2011 Petition To Vacate the *Avery* Judgment**   In 2011, claiming that they had uncovered new evidence, Plaintiffs filed a petition to vacate the 2005 judgment and reinstate the $1.05 billion judgment.  ([13-4] at 5-37, SA349.)  Asserting that the 2005 judgment was void and procured by fraud, Plaintiffs again focused on the alleged "extraordinary efforts and substantial funding made by State Farm to Justice Karmeier's 2004 campaign."  ([13-4] at 6-7, SA350-51.) As in their present Complaint, Plaintiffs alleged that "State Farm deliberately lied to and misled th[e] [Illinois Supreme] Court, and concealed information from th[e] Court in 2005 in an effort to conceal its extraordinary support of Justice Karmeier's campaign and to thwart Justice Karmeier's disqualification."  ([13-4] at 7, SA351.)  Plaintiffs submitted two new affidavits, one from Wojcieszak (the same affiant relied on by Plaintiffs in their February 2005 motion) ([13-6]; [13-7]); and another from retired FBI agent Daniel Reece, also cited in Plaintiffs' Complaint here. ([13-5] at 5-50, SA331.)

In response, State Farm showed that the Illinois Supreme Court had already rejected these same claims on multiple occasions and that Plaintiffs' attempt to overturn the judgment would contravene Illinois judicial and public policies regarding the finality of judgments and chill First Amendment rights to participate in judicial elections.  (*See* [13-9] at 16-20, SA383-87.)  State Farm also contended that Plaintiffs' supposedly new evidence (the same "evidence" referenced in Plaintiffs' present Complaint) was not new at all, but merely a recycled version of Plaintiffs' prior submissions.  ([13-9] at 31-34, 36-41, 43-44, SA390-93,395-400,402-03.)  State Farm further showed that Plaintiffs' evidence did not support their assertions (*id.*) and moved to strike Plaintiffs' affidavits and exhibits as based on unreliable hearsay and speculation and as untimely. ([13-19] at 1-37, SA405-41.)

On November 17, 2011, the Illinois Supreme Court, in an order signed by Chief Justice

Kilbride, denied Plaintiffs' Motion to Vacate and struck Plaintiffs' affidavits. ([13-3] at 91-92, SA119-20.) Justices Karmeier and Thomas did not participate in that decision. On May 24, 2012, Plaintiffs filed the instant action. The district court denied State Farm's motion to dismiss on March 28, 2013 ([67], RA1), and denied State Farm's motion for reconsideration or certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) on December 4, 2013. ([155], RA44.)

## REASONS WHY THE WRIT SHOULD ISSUE

### I.    THIS COURT HAS AUTHORITY TO ISSUE THE REQUESTED WRIT

Mandamus is a "'drastic remedy traditionally used to confine a lower court to the lawful exercise of its jurisdiction or to compel it to exercise its authority when it has a duty to do so.'" *Abelesz*, 692 F.3d at 651 (citation omitted). Mandamus is not appropriate to review "routine denials of motions to dismiss." *Id.* A "party seeking the writ must demonstrate that the challenged order is not effectively reviewable at the end of the case, that is, without the writ the party will suffer irreparable harm." *Id.* at 652. "The petitioner 'must ordinarily demonstrate that something about the order, or its circumstances, would make an end-of-case appeal ineffectual or leave legitimate interests unduly at risk.'" *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1295 (7th Cir. 1995) (citation omitted). "Second, the party seeking the writ must demonstrate a clear right to the writ." *Abelesz*, 692 F.3d at 652; *see also U.S. v. Vinyard*, 539 F.3d 589, 591 (7th Cir. 2008) (the challenged order must be "'at the very least, patently erroneous'" (citation omitted)). "Last, the issuing court must be satisfied that issuing the writ is otherwise appropriate." *Abelesz*, 692 F.3d at 652. "These hurdles, however demanding, are not insuperable," *Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 381 (2004), and mandamus is a "discretionary review mechanism[]" that functions as an invaluable "'safety valve[] for promptly correcting serious errors.'" *In re Whirlpool Corp.*, 597 F.3d 858, 860 (7th Cir. 2010) (citations omitted).

The standard for a writ of mandamus is clearly met here.  The district court has manifestly exceeded its jurisdiction under *Rooker-Feldman*.  In 2005, Plaintiffs argued three separate times to the Illinois Supreme Court that Justice Karmeier's participation in *Avery* was improper.  The only avenue for Plaintiffs to appeal the Illinois Supreme Court's refusal to disqualify Justice Karmeier was through a certiorari petition to the United States Supreme Court.  Plaintiffs filed such a petition in 2006, and it was denied.  *Avery*, 547 U.S. 1003.  In 2011, Plaintiffs petitioned the Illinois Supreme Court to vacate the judgment, arguing that the judgment had been procured by fraud and that Justice Karmeier's participation deprived Plaintiffs of due process.

Plaintiffs' present attempt to relitigate the purported impropriety of Justice Karmeier's participation in *Avery* in the guise of RICO claims is barred by *Rooker-Feldman*, and the district court's decision to permit Plaintiffs to proceed is plainly contrary not only to this Court's *Rooker-Feldman* jurisprudence, but also to decisions by seven other Courts of Appeals barring federal suits challenging a state court judge's refusal to recuse.  Plaintiffs' RICO claims are inextricably intertwined with the judgments of the Illinois Supreme Court and constitute an impermissible attempt to have those judgments reviewed and overturned by the federal district court.  The district court's exercise of jurisdiction is patently improper, and mandamus is warranted to "'confine'" the district court "'to the lawful exercise of its jurisdiction.'"  *Abelesz*, 692 F.3d at 651 (citation omitted).

The district court also fundamentally abused its discretion in denying dismissal of Plaintiffs' claims on grounds of *res judicata*, collateral estoppel, and failure to state a claim.  Plaintiffs' RICO claims fail to meet RICO's jurisdictional requirement of proximate and but-for causation, and are not based upon allegations of legally cognizable RICO predicate acts.  As shown below, under clear precedents from this Court, Plaintiffs' RICO claims suffer from glaring deficiencies

that require their dismissal as a matter of law.

Immediate review is warranted under the exceptional circumstances of this case and the extraordinary and serious intrusion that the litigation of this case will cause to the Illinois Supreme Court. This litigation, if permitted to continue, not only threatens to impair the authority of the Illinois Supreme Court's decision in *Avery*,[4] but will intrude the federal district court into issues of disqualification that are intrinsic to the judicial processes and functioning of the Illinois Supreme Court. The scurrilous nature of Plaintiffs' allegations, including their assertion that Justice Karmeier, a sitting justice on the Illinois Supreme Court, was a participant in the alleged RICO enterprise, and their repetition of baseless accusations that the Illinois Supreme Court has repeatedly rejected, impugn the integrity of the Illinois Supreme Court and the entire Illinois justice system. Continued litigation of these allegations would only "come at the cost of much disrespect" to the state court proceedings and judgments involved. *ASARCO Inc. v. Kadish*, 490 U.S. 605, 623 (1989). Moreover, the destructive effects will likely extend to Illinois' judicial elections process as Justice Karmeier is facing a retention election in the coming year.

Thus, the "principles of federalism and comity that underlie the *Rooker-Feldman* doctrine" are central in this case and underscore the need for immediate review. *See Bianchi v. Rylaarsdam*, 334 F.3d 895, 902 & n.6 (9th Cir. 2003). The burden imposed on the judicial system by "litigants who refuse to accept adverse decisions," *Homola v. McNamara*, 59 F.3d 647,

---

[4]  The Illinois Supreme Court's decision in *Avery* is now settled law in Illinois. It has been cited at least 11 times by the Illinois Supreme Court, 111 times by the Illinois Appellate Courts, 16 times by the Seventh Circuit, and 158 times by Illinois federal district courts, as well as by courts around the country, including by the Ohio Supreme Court in its recent decision in *Cullen v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 5941377, 2013-Ohio-4733 (Nov. 5, 2013). As this Court stated in *Greenberger v. GEICO General Insurance Co.*, 631 F.3d 392, 395 (7th Cir. 2011), the Illinois Supreme Court's "comprehensive" decision in *Avery* "established the common-sense proposition that a policyholder's suit against his insurer for breach of its promise to restore his collision-damaged car to its preloss condition cannot succeed without an examination of the car."

648, 651 (7th Cir. 1995), also warrants granting of the writ in this case, given Plaintiffs' refusal to accept the repeated adverse decisions of the Illinois Supreme Court (and the United States Supreme Court) on the issue of Justice Karmeier's participation in *Avery*.

Plaintiffs' continued litigation of these claims also places an intolerable burden on State Farm.  If the writ is not granted, State Farm will suffer harm that cannot be repaired through appeal after trial.  Plaintiffs' RICO fraud claims are of a nature to cause severe reputational damage not only to Justice Karmeier, but also to State Farm.  *Cf., e.g.*, *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1004 (11th Cir. 1997) (granting mandamus; citing irreparable harm to defendant's reputation).  State Farm believes that when this Court examines the *Rooker-Feldman* issues raised by Plaintiffs' lawsuit, whether now or on appeal, it will determine that jurisdiction is lacking and that State Farm has a clear right to dismissal on jurisdictional grounds.  State Farm also is confident that Plaintiffs' RICO claims have no legal or factual merit.  Yet, if on a later appeal this Court determines that there is no jurisdiction, factual and legal errors in the trial of Plaintiffs' RICO claims will not be subject to correction on appeal.  *See Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004).  A finding of no jurisdiction will not repair the significant damage that would be caused to State Farm by a trial of this case.  In addition, continued litigation of the claims here will inevitably chill State Farm's and others' exercise of constitutional rights – not only to support a judicial campaign (if they choose to do so), but also to petition the courts, given that the purported RICO predicate acts are State Farm's mailing of its briefs in the Illinois litigation.

In short, State Farm's right to a dismissal of the claims against it for lack of jurisdiction is clear, as is the utter lack of merit of Plaintiffs' RICO claims.  State Farm's clear right to relief and the confluence of factors demonstrating the irreparable harm to State Farm that would occur with

12

the continued litigation of this case establish that writ relief is appropriate and should be granted.

## II. THE DISTRICT COURT CLEARLY EXCEEDED ITS JURISDICTION UNDER *ROOKER-FELDMAN*.

The *Rooker-Feldman* doctrine holds that, under 28 U.S.C. § 1257, federal district courts do not have jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir.), *cert. denied*, 133 S. Ct. 176 (2012). The reason "quite simply, is that no matter how erroneous or un-constitutional the state court judgment may be, only the Supreme Court of the United States has jurisdiction to review it." *Brown*, 668 F.3d at 442. *Rooker-Feldman* bars jurisdiction even for federal claims that were not raised in state court or do not on their face seek review of a state court's decision if the claims are "inextricably intertwined" with a state court judgment. *Id.*[5]

Plaintiffs' claims here are inextricably intertwined with the Illinois Supreme Court's 2005 judgment on the merits in *Avery* and with its decisions rejecting Plaintiffs' challenges to Justice Karmeier's participation in *Avery*. The district court's conclusion that *Rooker-Feldman* does not apply is contrary to case after case decided by this Court and other Courts of Appeals and to the basic principles set forth in those cases. There is no colorable argument supporting jurisdiction.

### A. Plaintiffs' Claim for Damages in the Amount of the Judgment Reversed by the Illinois Supreme Court in *Avery* Is Tantamount to a Request to Vacate the Illinois Supreme Court's Decision

The district court erroneously ruled that "at this stage of the pleadings and as accepting the allegations as true as the Court must, the Court concludes that the complaint does not request

---

[5] This Court reviews the district court's application of *Rooker-Feldman* de novo. *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603-04 (7th Cir. 2008).

that the *Avery* judgment be overturned or reviewed." ([67] at 15, RA15.)  This Court and other

courts, however, have held that a suit (like this one) requesting damages in the same amount as

in a prior state court litigation is "tantamount" to a request to vacate the state court judgment.

*See, e.g.*, *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 533-34 (7th Cir. 2004) (suit requesting

"recovery of [plaintiff's] home" or "compensatory damages in the amount of the value of [plain-

tiff's home" was "tantamount to a request to vacate the state court's judgment of foreclosure" and

was barred by *Rooker-Feldman*); *Maple Lanes, Inc. v. Messer*, 186 F.3d 823, 826 (7th Cir. 1999)

(*Rooker-Feldman* barred claim seeking "monetary damages equal to the value of the liquor li-

cense," as "this result would effectively reverse the state court judgment upholding the revoca-

tion of the liquor license"); *accord Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir.

1995) ("*Rooker-Feldman* precludes a federal action if the relief requested in the federal action

would effectively reverse the state court decision or void its ruling.").

Plaintiffs' Complaint alleges a RICO injury to business or property consisting of the loss

of the $1.05 billion judgment that was reversed by the Illinois Supreme Court.  (*See, e.g.*, [2] ¶ 1,

SA1 ("the [alleged] RICO enterprise . . . enable[d] State Farm to evade payment of a $1.05 bil-

lion judgment"); [2] ¶ 41, SA14 (Plaintiffs . . . have been damaged . . . in that . . . they have lost

the value and benefit of the $1.05 billion judgment"); [2] ¶ 132, SA33 ("Defendants' conduct of

the Enterprise . . . succeeded . . . in ultimately depriving Plaintiffs and the Class of . . . the $1.05

billion judgment awarded to them in the *Avery Action*"); *see also* [2] ¶¶ 2, 8, 14, 98, 112, 138,

SA2-3,5,26,29,34.)

Thus, the alleged injury, the loss of the $1.05 billion damage award reversed by the

judgment of the Illinois Supreme Court, is not "distinct from that judgment," *see Garry v. Geils*,

82 F.3d 1362, 1365-66 (7th Cir. 1996), and Plaintiffs' claim is "tantamount" to a request to va-

cate both the Illinois Supreme Court's 2005 judgment and its 2011 judgment denying vacation of that judgment.  Plaintiffs cannot circumvent *Rooker-Feldman* "by recasting [their] request for the district court to review state-court rulings as a complaint about . . . RICO violations." *Wallis v. Fifth Third Bank*, 443 F. App'x 202, 204-05 (7th Cir. 2011).

### B.     The District Court Erred in Holding that Plaintiffs Had Alleged An Independent Constitutional Injury Not Subject to *Rooker-Feldman*

In ruling that *Rooker-Feldman* does not bar jurisdiction, the district court erroneously held that Plaintiffs were alleging an "independent legal wrong," namely, "the denial of their constitutional rights and the related injury."  ([67] at 15-16, RA15-16.)  This ruling was manifestly erroneous not least because Plaintiffs' Complaint does not allege or assert any claim based upon the purported violation of their constitutional rights.[6]  Plaintiffs' purported constitutional claims were asserted only in their brief opposing State Farm's motion to dismiss.  ([47-1] at 13, SA456.)  It is a "basic principle that [a] complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012).  Plaintiffs' Complaint alleges only RICO claims and a RICO injury to business or property.

Moreover, even if Plaintiffs had included constitutional claims in their Complaint, those claims would be still barred by *Rooker-Feldman*.  Plaintiffs claimed that Justice Karmeier's participation violated due process in their 2005 motion for reconsideration ([13-15] at 5, 9-13, SA244,248-52) and in their 2005 petition for rehearing ([13-16] at 17-18, 21-27, SA261-62,265-71), which were both denied by the Illinois Supreme Court.  Plaintiffs again raised due process

---

[6] The two counts of the Complaint are violations of 18 U.S.C. § 1962(c) and of 18 U.S.C. § 1962(d).  The Complaint does not contain the word "constitutional," and the words "due process" appear only once, in Plaintiffs' description of the Supreme Court's decision in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), which Plaintiffs allege prompted them to further investigate their claims.  (*See* [2] ¶ 61, SA18.)  As shown below, contrary to Plaintiffs' assertions, this case does not resemble *Caperton*.  *See* Point IV.B *infra*.

claims in their 2011 petition to vacate the judgment ([13-4] at 6, 11, 20-21, 30-33, SA350,355,364-65,374-77), which was also denied by the Illinois Supreme Court. These claims may not be relitigated in federal court. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413, 415 (1923) ("If the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them."); *Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 900-02 (7th Cir. 2010) (*Rooker-Feldman* barred due process claim that had been presented to state court and cursorily denied).

### C.     The District Court Erred in Holding that Plaintiffs Were Challenging Defendants' Actions in Procuring the *Avery* Judgment, Not the Judgment Itself

The district court also erroneously accepted Plaintiffs' assertion that they were not injured by the Illinois Supreme Court's reversal of that $1.05 billion judgment, but by Defendants' "actions in procuring" that judgment. ([67] at 15, RA15.) Contrary to the district court's ruling, the fact that Plaintiffs purport to base their claims on "the defendants' actions in procuring the *Avery* judgment" (*id.*) does not mean that Plaintiffs are alleging an independent injury separate from the loss of the $1.05 billion damages award reversed by that judgment. Moreover, Plaintiffs' contentions that State Farm procured the judgment in *Avery* by misstatements and omissions in its briefs were presented to and rejected by the Illinois Supreme Court, which, as the court that rendered the judgment, was "the proper court for an assertion of fraud in the procurement of [the] judgment." *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 511 (7th Cir. 1996).

The district court's ruling that *Rooker-Feldman* did not apply because Plaintiffs were claiming injury from State Farm's action in procuring the judgment and not from the judgment itself is directly contrary to this Court's decision in *Kelley v. Med-1 Solutions, LLC*. In *Kelley*, the plaintiffs "carefully craft[ed] their argument so that their lawsuit s[ought] only to remedy defendants' *representations* and *requests* related to attorney fees, and not the state court judgments

16

granting those requests." 548 F.3d at 604. Nonetheless, this Court concluded that the plaintiffs' claims were barred by *Rooker-Feldman* because "defendants needed to prevail in state court in order capitalize on the alleged fraud" and the Court "could not determine that defendants' representations and requests related to attorney fees violated the law without determining that the state court erred by issuing judgments granting the attorney fees." *Id.* at 605.

Like the plaintiffs in *Kelley*, Plaintiffs here should not be permitted to "'avoid *Rooker-Feldman* by framing their claims in terms of defendants' attempts to obtain exactly what the state court awarded to them.'" *Id.* (citation omitted); *see also Kropelnicki v. Siegel*, 290 F.3d 118, 129 (2d Cir. 2002) (*Rooker-Feldman* bars claims if ruling sought in federal court "would effectively declare the state court judgment fraudulently procured and thus void"), *narrowed on other grounds by Exxon Mobil*, 544 U.S. 280 (2005); *Taylor*, 374 F.3d at 534 (*Rooker-Feldman* barred jurisdiction because, absent the judgment in state court, plaintiffs "would not have suffered the injuries for which [they] now seek[] to be compensated." (citation omitted)); *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008) (if plaintiff's injury was caused by court order, under *Rooker-Feldman*, "[i]t is of no consequence that [plaintiff's] complaint does not challenge [the order] specifically"). Thus, contrary to the district court's opinion, for purposes of *Rooker-Feldman*, it is irrelevant that Plaintiffs "do not *allege* that they have been injured by the Illinois Supreme Court" and that it does not "*appear*" from Plaintiffs' Complaint that they "are attacking the merits of the *Avery* judgment." ([67] at 15-16, RA15-16 (emphasis added).)

Furthermore, the judgments of the Illinois Supreme Court that are protected by *Rooker-Feldman* include not only its 2005 reversal of the $1.05 billion judgment, but also the Court's repeated denials of Plaintiffs' motions to recuse Justice Karmeier and its denial of Plaintiffs' 2011 petition to vacate the 2005 judgment. Plaintiffs' 2011 petition urged reinstatement of the $1.05

billion judgment based on claims that Justice Karmeier's participation and the judgment had been procured by purported fraudulent misrepresentations and omissions in State Farm's briefs (the same briefs that Plaintiffs now claim were RICO predicate acts) and that Justice Karmeier's participation in *Avery* violated Plaintiffs' due process rights.  (*See* [13-4] at 6, 11, 17-21, 23-31, SA350,355,361-65,367-75.)  This Court has held that an Illinois state court judgment in a proceeding for post-judgment relief under 735 ILCS 5/2-1401 (like the Illinois Supreme Court's 2011 judgment) is a judgment for purposes of *Rooker-Feldman*.  *See Beth-El All Nations Church v. City of Chicago*, 486 F.3d 286, 292 (7th Cir. 2007).  Plaintiffs' RICO claims duplicate the claims rejected by the Illinois Supreme Court in 2011 and are barred by *Rooker-Feldman*.

### D. The District Court Clearly Abused Its Discretion in Disregarding the Parties' Claims and Contentions in the Illinois Supreme Court

It is indisputable that Plaintiffs' 2005, 2006 and 2011 state court briefs and filings in the Illinois Supreme Court contained the same allegations, claims, and arguments as Plaintiffs' present Complaint, including their allegations that State Farm misrepresented its purported involvement in Justice Karmeier's campaign and that the *Avery* judgment was procured by fraud and void ([13-4] at 12-13, SA356-57).  Those briefs also alleged that Justice Karmeier's participation in *Avery* violated due process.  (*See* [13-4] at 6, 11, 17-21, SA350,355,361-65; [13-14] at 44, SA235; [13-15] at 9-13, SA248-52).

State Farm argued that this duplication of claims, arguments, and allegations demonstrated that Plaintiffs' RICO claims were inextricably entwined with their state court claims.[7]  Yet,

---

[7]  In support of its motion to dismiss, State Farm submitted an Appendix that included the relevant pleadings, submissions and orders from the parties' prior litigation [13-3 to 13-19].  State Farm also submitted a separate index to the Appendix [13-2] and a chart showing side-by-side comparisons of Plaintiffs' allegations in the earlier litigation and those in the instant action, with citations to the relevant materials in its Appendix, demonstrating that the allegations were substantially the same ([13-1], SA121).

although the district court recognized its "duty to look beyond the allegations of the complaint to determine that it had [subject matter] jurisdiction to hear the [plaintiffs'] claim," [67] at 11-12, RA11-12 (citing *Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002)), conspicuously absent from the court's opinion is any consideration of the claims and arguments made by Plaintiffs in the Illinois Supreme Court and of the Illinois Supreme Court's repeated denials of Plaintiffs' motions to disqualify.  These facts are crucial to the *Rooker-Feldman* analysis, and the district court clearly "abuse[d] its discretion" by failing to include in its analysis facts "not subject to reasonable dispute."  *See Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003).[8]

   As in *Brown v. Bowman*, "a simple reading" of the relevant court documents shows that Plaintiffs here are pressing "essentially the same arguments [they] made to the [Illinois] Supreme Court."  668 F.3d at 444 (affirming dismissal on *Rooker-Feldman* and other grounds).  Thus, even if Plaintiffs had now alleged constitutional or other injuries separate from the reversal of the $1.05 billion award (as the district court incorrectly held), those claims were adjudicated by the Illinois Supreme Court and are barred by *Rooker-Feldman*, as are Plaintiffs' claims that Justice Karmeier's participation and reversal of the $1.05 billion damages award were procured by fraud.

---

[8]   This Court has repeatedly approved taking judicial notice of state court submissions and orders on motions to dismiss.  *See, e.g.*, *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012) (holding that on Rule 12(b)(6) dismissal district court properly took judicial notice of "indisputable facts" established by court documents, including "that those documents exist, they say what they say, and they have had legal consequences"); *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 492-93 (7th Cir. 2011) (under "standard" for 12(b)(6) dismissal, courts "tak[e] judicial notice of matters within the public record"); *see also id.* at 494 (taking judicial notice of orders and court documents in related litigations); *Johnson v. City of Kankakee*, 397 F. App'x 238, 239-40 (7th Cir. 2010) (affirming dismissal based on claim preclusion; judicially noticing court records); *see also* Fed. R. Evid. 201(c)(2) (court "*must* take judicial notice if a party requests it and the court is supplied with the necessary information") (emphasis added).

### E.    Plaintiffs' Contention that They Were Injured by the Illinois Supreme Court Rules Does Not Save Their Claims from *Rooker-Feldman*'s Jurisdictional Bar

Plaintiffs also incorrectly argued to the district court that they were not challenging the decisions of the Illinois Supreme Court but were challenging the Illinois "Supreme Court Rules," which purportedly "permitted *Justice Karmeier alone* to decide the issue of his recusal and precluded the full Court from interfering in that decision." ([47-1] at 15, SA458 (emphasis added).) This argument was apparently accepted by the district court. (*See* [67] at 16, RA16.)

The record facts, however, establish that the issue of Justice Karmeier's recusal was decided twice by the Illinois Supreme Court without Justice Karmeier, once by the Court with Justice Karmeier participating, and once by Justice Karmeier alone:

- Plaintiffs' first motion for recusal requested either that Justice Karmeier recuse himself or that the "remainder of the Court" order his disqualification. ([13-8] at 2, SA152.) That motion was denied by the Illinois Supreme Court *without Justice Karmeier's participation.* ([13-3] at 1, SA114.)

- Plaintiffs then filed a motion asking that Justice Karmeier recuse himself, or alternatively, that the court reconsider its decision. ([13-14] at 43-44, 47-48, SA234-35,238-39.) *Justice Karmeier declined to recuse himself.* ([13-3] at 2, SA115.)

- After the *Avery* decision issued, Plaintiffs petitioned for rehearing based on Justice Karmeier's participation. ([13-16] at 16-28, SA260.) Plaintiffs argued that *the Illinois Supreme Court "practice" under Supreme Court Rule 63 of permitting a Justice to decide not to recuse himself did not satisfy due process.* ([13-16] at 26-27, SA270-71.) Plaintiffs' petition for rehearing was denied *by the whole court.* ([13-3] at 80, SA116.)

- In 2011, Plaintiffs filed a petition to vacate the judgment in *Avery*, based on Justice Karmeier's participation and on substantially the same allegations as Plaintiffs' present Complaint. ([13-4] at 5-37, SA349.) *Plaintiffs' petition was decided by the Court without Justice Karmeier's participation.* ([13-3] at 91, SA119.)

These judicially noticeable facts make clear that Plaintiffs challenged the Illinois Supreme Court Rules in their petition for rehearing ([13-16] at 26-27, SA270-71) and cannot relitigate the issue here. It is also clear that Plaintiffs' contention that Justice Karmeier alone ruled on the issue of

his recusal and that the Illinois Supreme Court Rules thus denied them a reasonable opportunity to present the issue to the whole court is entirely without merit and does not permit them to evade *Rooker-Feldman*.

### F.    As Numerous Federal Courts of Appeals Have Held, *Rooker-Feldman* Bars Relitigation of State Court Denials of Motions to Recuse

The United States Courts of Appeals have consistently held that *Rooker-Feldman* bars jurisdiction when a party attempts to relitigate issues regarding the disqualification or recusal of a state court judge.  For example, in *Howell v. Supreme Court of Texas*, the plaintiff (like Plaintiffs here) had raised in state court a due process challenge to participation of certain justices and that challenge was decided against him.  885 F.2d 308, 312 (5th Cir. 1989).  The Fifth Circuit held that *Rooker-Feldman* barred a new constitutional challenge in federal court because "[t]he due process issue was explicit in Howell's motion to recuse and was necessarily rejected by the justices in denying his motion." *Id.*  In *Smith v. Bender*, 350 F. App'x 190, 193 (10th Cir. 2009), the Tenth Circuit held that "the *Rooker-Feldman* doctrine bars [the plaintiff] from relitigating the refusal of the Justices of the Colorado Supreme Court to recuse from his appeal" in an earlier litigation.  "Because the recusal issue was inextricably intertwined with the state-court judgment, [plaintiff's] only available avenue for relief was to seek certiorari review in the United States Supreme Court." *Id.*  Like Plaintiffs here, Mr. Smith had sought "certiorari review of the recusal issue," and the "Supreme Court denied his certiorari petition." *Id.* at 193-94.

The First, Fourth, Sixth, Ninth and Eleventh Circuits have also applied *Rooker-Feldman* to bar relitigation in federal court of denials of motions to recuse or disqualify state court judges. *See Ellison v. Brock*, 122 F. App'x 519, 520 (1st Cir. 2004) (*Rooker-Feldman* barred jurisdiction; the "premise of plaintiff's damage claim is that the New Hampshire Supreme Court was incorrect in denying plaintiff's various motions for relief from judgment based on the alleged disqualifica-

tion of [state supreme court justice]"); *Dababnah v. Burnside*, 2000 U.S. App. LEXIS 11342, at *5 (4th Cir. May 12, 2000) (*Rooker-Feldman* barred review of state court decisions on disqualification of state court judge); *Fieger v. Ferry*, 471 F.3d 637, 644 (6th Cir. 2006) (*Rooker-Feldman* barred claim that state court justices' refusal to recuse themselves in past cases violated due process); *Bianchi*, 334 F.3d at 899-900 (*Rooker-Feldman* barred relitigation of claim that state judge should have been recused); *Wilson v. Selma Water Works & Sewer Bd.*, 522 F. App'x 634, 635 (11th Cir. 2013) (per curiam) (*Rooker-Feldman* barred claims that plaintiff's due process rights were violated by "state-court trial judge's failure to recuse himself").

These decisions accord with this Court's *Rooker-Feldman* jurisprudence and underscore the egregious nature of the district court's error in holding that it has jurisdiction over Plaintiffs' claims in this case. This Court should grant mandamus directing dismissal of Plaintiffs' claims for lack of subject matter jurisdiction.

## III. THE DISTRICT COURT CLEARLY ABUSED ITS DISCRETION IN DECLINING TO HOLD THAT *RES JUDICATA* AND COLLATERAL ESTOPPEL BAR PLAINTIFFS' CLAIMS

Even if *Rooker-Feldman* did not apply, the district court clearly abused its discretion in declining to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds of *res judicata* and/or collateral estoppel. Plaintiffs litigated the same claims and issues in the Illinois Supreme Court, and they are barred from re-litigating them in the district court.

**A. Res Judicata**. The federal courts apply Illinois law to determine whether an Illinois state court judgment constitutes *res judicata*. *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1231-35 (7th Cir. 1986). Under Illinois law, *res judicata* applies where "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998). *Res judicata* bars not only claims that were asserted

in the prior action, but also all other claims that could have been asserted. *See La Salle Nat'l Bank v. Cnty. Bd. of Sch. Trs.*, 337 N.E.2d 19, 22 (Ill. 1975).

*Res judicata* bars Plaintiffs' claims as a matter of law. The Illinois Supreme Court issued a final judgment on the merits, reversing the $1.05 billion judgment, and rejected Plaintiffs' repeated challenges to Justice Karmeier's participation in the judgment. Plaintiffs asserted in the district court that the judgment in *Avery* is void and not final; however, that same assertion was made by Plaintiffs in their petition to vacate the judgment and was rejected by the Illinois Supreme Court. It is undisputed that the parties are identical, as each Plaintiff here was a named plaintiff and class member in *Avery* ([2] ¶¶ 3, 46, SA2,15), and State Farm was the defendant.

Under Illinois' "transactional test," there is identity of cause of action even if different kinds or theories of relief are asserted, provided "both cases arise from the 'same transaction' and involve 'the same, or nearly the same[,] factual allegations.'" *Highway J Citizens Grp. v. U.S. Dep't of Transp.*, 456 F.3d 734, 740 (7th Cir. 2006) (citation omitted); *see also City of Chicago v. Midland Smelting Co.*, 896 N.E.2d 364, 376 (Ill. App. Ct. 2008) (identity of cause of action exists if claims are based on "'a single group of operative facts'" (citation omitted)). Under this test, Plaintiffs' claims are the same as those previously adjudicated. *See Du Page Forklift Serv., Inc. v. Material Handling Servs., Inc.*, 744 N.E.2d 845, 851 (Ill. 2001) (presenting "somewhat different evidence on what is essentially the same claim will not bar preclusion").

The district court erroneously refused to rule on *res judicata* and collateral estoppel "at this stage in the proceedings," holding that it was "unclear from the record before the Court what merits were reached regarding the issues contained in plaintiffs' complaint at bar and it is unclear whether plaintiffs had a full and fair opportunity to litigate those issues during the *Avery* proceedings." ([67] at 20, RA20.) This Court has held that the Illinois post-judgment relief statute

provides a full and fair opportunity to litigate issues regarding the validity of a judgment, *see Walsh Constr. Co. v. Nat'l Union Fire Ins. Co.*, 153 F.3d 830, 833 (7th Cir. 1998), and the record establishes that in 2011 Plaintiffs raised in state court all the issues they now raise in federal court, including their purported "new" evidence regarding Justice Karmeier's campaign.  ([13-4] at 6-7, 9, 24, SA350-51,353,368; [13-5] at 5-50, SA331; *see supra* at p. 8); *cf. Johnson v. City of Kankakee*, 397 F. App'x 238, 239-40 (7th Cir. 2010) ("taking judicial notice of public court records" in affirming dismissal based on *res judicata*).

**B.  Collateral Estoppel**.  Collateral estoppel bars relitigation if "'(1) the issue decided in the prior adjudication is identical [to] the one presented in the [subsequent action], (2) there was a final judgment on the merits in the prior [action], and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior [action].'"  *Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010) (citation omitted).  In addition, the issues must have been "actually or necessarily finally determined."  *Grisanzio v. Bilka*, 511 N.E.2d 762, 764 (Ill. App. Ct. 1987).  Here, the propriety of Justice Karmeier's participation in *Avery* was conclusively decided by the Illinois Supreme Court, and Plaintiffs are collaterally estopped from relitigating the same issues.

**IV.   THE DISTRICT COURT CLEARLY ABUSED ITS DISCRETION IN FAILING TO DISMISS PLAINTIFFS' RICO CLAIMS AS A MATTER OF LAW**

**A.   The District Court Manifestly Erred in Holding that State Farm's Mailings of Its Briefs Can Constitute RICO Predicate Acts and Form a RICO Pattern**

The district court committed patent legal error in ruling that State Farm's service of its briefs by mail can constitute RICO predicate acts of mail fraud.  In *United States v. Pendergraft*, the Eleventh Circuit stated that "[a] number of courts have considered whether serving litigation documents by mail can constitute mail fraud, and all have rejected that possibility."  297 F.3d 1198, 1208 (11th Cir. 2002) (citing cases).  In *Pendergraft* and in its later decision in *Raney v. Allstate Insurance Co.*, 370 F.3d 1086 (11th Cir. 2004), the Eleventh Circuit agreed, holding that

"that Congress did not intend to punish citizens merely for accessing the legal system":

> [C]ourts possess adequate procedures to distinguish valid claims from invalid claims and [we] held that Congress did not intend to punish citizens merely for accessing the legal system.  We found ourselves "troubled by *any* use of this federal criminal statute to punish civil litigants." . . . We also expressed concern about transforming every state-law malicious prosecution action into a federal crime.

*Raney*, 370 F.3d at 1088 (quoting *Pendergraft*, 297 F.3d at 1206-07).

The present case bears out the concern of the Eleventh Circuit that "prosecuting litigation activities as federal crimes would undermine the policies of access and finality that animate our legal system" and lead to a "piling of litigation on litigation without end."  *Pendergraft*, 297 F.3d at 1207-08.  Moreover, given that the briefs at issue were all filed in response to Plaintiffs' motions, holding that briefs can serve as predicate acts would effectively permit plaintiffs to "create a predicate act," "entrap[ping] defendants in otherwise nonexistent crimes."  *Lathrop v. Juneau & Assocs., Inc.*, 2005 WL 3797706, at *7 (S.D. Ill. Apr. 25, 2005).  Further, RICO claims based on briefs filed in state court "usurp underlying legitimate state court litigation" and "inappropriately bypass the state tribunal."  *Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 171 (E.D.N.Y 2010), *aff'd*, 443 F. App'x 582 (2d Cir. 2011).

In short, Plaintiffs' attempt to use briefs filed in state court as the basis for their RICO claims raises another aspect of the policy concerns that underlie the doctrines of *Rooker-Feldman* and *res judicata*.  Expanding RICO predicate acts to encompass briefs filed in state court would defeat these doctrines, providing an improper opportunity for plaintiffs to relitigate claims that have been conclusively rejected and to regenerate their claims each time a defendant files a response brief.

In addition, State Farm's mailing of responsive briefs relating to a single litigation, even if predicate acts, does not satisfy the RICO pattern requirement.  Plaintiffs allege a single fraudu-

lent scheme to obtain reversal of the $1.05 billion judgment in *Avery*. Such a "distinct and non-reoccurring scheme with a built-in termination point" does not satisfy the RICO pattern requirement. *Gamboa v. Velez*, 457 F.3d 703, 710 (7th Cir. 2006); *see also Roger Whitmore's Auto. Servs., Inc. v. Lake County*, 424 F.3d 659, 673-74 (7th Cir. 2005) ("single, isolated scheme" of campaign fundraising does not make a RICO pattern). Indeed, if the "commonplace occurrence[]" of mailing more than one brief in a litigation could satisfy pattern and continuity, every litigation could eventually result in RICO claims. *Cf. Gamboa*, 457 F.3d at 710.[9]

This Court has recognized that not all mailings, even purportedly fraudulent ones, can constitute RICO predicate acts. *See Balderos v. City Chevrolet*, 214 F.3d 849, 854 (7th Cir. 2000). The Court in *Balderos* rejected the theory that "a violation of the Truth in Lending Act that is accomplished through mail or wire communications is a predicate act," stating that "[i]t is a rare case of extension of credit that does not involve mail or wire communications, and so the practical effect of the plaintiff's argument would be to criminalize the Truth in Lending Act." *Id.* Because Plaintiffs' theory of predicate acts improperly criminalizes ordinary litigation conduct, dismissal of Plaintiffs' claims is required as a matter of law.[10]

---

[9]    Moreover, the alleged purpose of State Farm's briefs was to "suppress and conceal" State Farm's support of Justice Karmeier's campaign. ([2] ¶¶ 124, 131, SA32-33.) Thus, those briefs "'do nothing to extend the duration of the underlying . . . scheme,'" *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 474 (7th Cir. 2007) (citation omitted), and "d[o] not threaten future harm or a repetition of . . . illegal acts" or "impart any new injury." *Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 953 F.2d 587, 594 (11th Cir. 1992).

[10]   Plaintiffs' briefs and other filings in state court also establish that they were aware of the basis for their RICO claims in 2005-2006 (*see, e.g.*, [13-14] at 1-5, SA226-30; [13-16] at 3-5, SA254-56; [13-16] at 81-88, SA294-301; *see supra* at pp. 5-7), and sustained their alleged injury at that time. ([21] at 22-23; [56] at 14-15; [71] 15-19.) Accordingly, contrary to the district court's rulings, their claims were time-barred in 2010 at the latest by the four-year RICO statute of limitations, and Plaintiffs are not entitled to equitable tolling as a matter of law.

**B.      Plaintiffs' RICO Claims Fail for Lack of Causation**

RICO requires that a plaintiff have suffered an injury to his business or property "by reason of" a violation of 18 U.S.C. § 1962.  *See* 18 U.S.C. § 1964(c).  The statutory term "by reason of" requires both proximate and "but for" causation.  *See DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011).  The district court committed manifest error in overlooking judicially noticeable facts that establish the absence of proximate and "but for" causation.

Plaintiffs' alleged injury is the loss of the "rightful damages awarded to [Plaintiffs and class members] by the *Avery Action* judgment."  ([2] ¶ 99, SA26.)  Thus, Plaintiffs are required to show that State Farm's purported RICO predicate acts – the alleged misrepresentations in its briefs to the Illinois Supreme Court – were the proximate and "but for" cause of the Illinois Supreme Court's reversal of the *Avery* judgment.[11]  The Illinois Supreme Court's decision and the votes of the Justices are a matter of public record.  Nevertheless, in denying dismissal for lack of causation, the district court appears to have looked solely to the allegations of the Complaint.  (*See* [67] at 30, RA30.)  The district court did not explain how State Farm's purported engineering of Justice Karmeier's election and Justice Karmeier's vote in *Avery* affected the outcome, given that the Illinois Supreme Court was *unanimous* in decertifying the nationwide contract and

---

[11]   The notion that Plaintiffs' loss of the $1.05 billion judgment could constitute a RICO injury is not sustainable.  Under RICO, each Plaintiff and class member must have a "concrete and actual" injury to business or property and a "clear and definite" amount of damages.  *Evans v. City of Chicago*, 434 F.3d 916, 932 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013).  Because Plaintiffs' and the class members' interest in $1.05 billion judgment was contingent upon the outcome in the Illinois Supreme Court, that judgment was not property for purposes of RICO.  *See In re Marriage of Duggan*, 877 N.E.2d 1140, 1144-45 (Ill. App. Ct. 2007) (a judgment under appeal is not a "final judgment" and is not a vested right of property); *Evans v. City of Chicago*, 689 F.2d 1286, 1296 (7th Cir. 1982) (similar), *overruled on other grounds*, 873 F.2d 1007 (7th Cir. 1989).  Moreover, no Plaintiff or class member was even determined to be entitled to a "clear and definite" amount of damages, *see Evans*, 434 F.3d at 932, because individual issues of fact and amount of damages were never resolved in *Avery*.

ICFA classes in *Avery*.  *See Avery*, 835 N.E.2d at 134-35, 215.  Whether the other justices might

have voted differently if Justice Karmeier had not participated is a matter of sheer speculation.

*Cf. Anderson v. Ayling*, 396 F.3d 265, 271 (3d Cir. 2005) (RICO "chain of causation" "too atten-

uated" because "at least three independent decisions" were involved in outcome).[12]

     The allegations in Plaintiffs' Complaint do not bridge the gap between Justice Karmeier's

participation and the overturning of the $1.05 billion judgment.  Between the purported cause

and the alleged effect are the individual thought processes of the Justices of the Illinois Supreme

Court.  Those Justices have an absolute deliberative privilege and cannot be compelled to dis-

close "intra-court communications made in the course of the judicial decision-making process

and concerning the court's official business."  *Thomas v. Page*, 837 N.E.2d 483, 493 (Ill. App.

Ct. 2005).  Information is not going to emerge to substantiate Plaintiffs' speculation that State

Farm's supposed misrepresentations resulted in Justice Karmeier's participation, which somehow

caused the unanimous vote of the Illinois Supreme Court, which brought about Plaintiffs' loss of

the "'damages awarded to them by the Avery Action Judgment.'"  ([67] at 30, RA30 (citation

omitted).)

     Plaintiffs also failed to allege facts indicating that the purported contributions to Justice

Karmeier's campaign influenced his vote in *Avery*.  Plaintiffs' allegations that Justice Karmeier

---

[12]  Plaintiffs incorrectly claim that a portion of the appellate court's decision would have stood
absent Justice Karmeier's participation, because two Justices (Justices Kilbride and Freeman)
would have remanded for a determination as to whether any contract subclasses were possible.
([2] ¶ 57, SA18.)   Under the Illinois Constitution, "the concurrence of four [Justices] is neces-
sary for a decision."  Ill. Const., art. 6, § 3.  However, the vote of Justices Kilbride and Freeman
to remand does not implicate this rule.  No portion of the appellate court's decision was reversed
by only four votes, and thus no portion would have escaped reversal if Justice Karmeier had not
participated.  Like other decisions, a decision to remand for further proceedings would have re-
quired four votes.  With or without Justice Karmeier, there were not four Justices in favor of re-
mand.  Accordingly, Justice Karmeier's vote was non-deciding on every issue.

knew of all the supposed "State Farm-influenced" contributions rest on allegations that Justice Karmeier generally knew the identity of his contributors. ([2] ¶ 90, SA24-25.) Notably, Justice Karmeier's campaign emails, retrieved from the trash at the behest of an unidentified group of Illinois trial lawyers and referenced in Plaintiffs' Complaint as revealing the "inner-workings" of the campaign ([2] ¶¶ 30, 67, SA10,20), mention many donors and supporters. They do not mention State Farm or Mr. Shepherd, do not evidence any campaign activity by State Farm or its employees, and do not show that Justice Karmeier knew or thought that State Farm had anything to do with his campaign. Moreover, because oral argument in *Avery* took place a year and a half before Justice Karmeier's election ([2] ¶ 48, SA16), there was every expectation that *Avery* would be decided long before the newly elected justice took office. In short, as a matter of law, State Farm's alleged actions did not "le[a]d directly to the plaintiff's injuries," as required under RICO. *RWB Servs., LLC v. Hartford Computer Grp.*, 539 F.3d 681, 688 (7th Cir. 2008) (citation omitted).

Plaintiffs' conclusory contentions that Justice Karmeier's participation "tainted" the proceedings do not support causation. This case is not similar to *Caperton*, where the justice whose recusal was sought (i) alone decided not to recuse himself and (ii) cast the deciding vote and (iii) there was no question that the defendant's contributions were known to that justice and made in the expectation that the justice would sit on the case. 556 U.S. at 884-87. Nor is the question here whether there was a "probability of actual bias," which was the constitutional question raised by the constitutional claims in *Caperton*.[13] *See id.* at 872. Rather, the issue of causation

---

[13]  Notably, Plaintiffs repeatedly cited *Caperton* in their unsuccessful 2011 Petition to the Illinois Supreme Court. ([13-4] at 6, 20-21, 26, 30-32, SA350,364-65,370,374-76.) Plaintiffs did not petition the United States Supreme Court for a writ of certiorari after the Illinois Supreme Court's denial of their 2011 Petition.

turns on whether Justice Karmeier's participation actually caused the reversal of the $1.05 billion award. Given the unanimous vote to reverse, the requirement of causation is not met.

Plaintiffs' RICO claims are fundamentally deficient as a matter of law. In the circumstances of this case, permitting Plaintiffs to proceed with their RICO claims and to relitigate in that guise their state court motions and petitions to recuse Justice Karmeier and vacate the *Avery* judgment is serious error and profoundly unfair. Review by this Court now, rather than after lengthy discovery and trial proceedings, is needed to avoid the substantial harms involved in Plaintiffs' present attempt in federal court to litigate those issues yet again.

## CONCLUSION

For the foregoing reasons, State Farm requests that the Court issue a writ of mandamus directing the district court to enter an order (i) dismissing Plaintiffs' Complaint for lack of subject matter jurisdiction or, alternatively, (ii) dismissing the Complaint for failure to state a claim.

Dated: December 17, 2013

Respectfully submitted,

Ronald S. Safer #6186143
Joseph A. Cancila, Jr. #6193252
James P. Gaughan #6204406
SCHIFF HARDIN, LLP
233 South Wacker Drive, Suite 6600
Chicago, IL 60606

  s/ J. Timothy Eaton
J. Timothy Eaton #0707341
SHEFSKY & FROELICH, LTD
111 East Wacker, Suite 2800
Chicago, IL 60601

Of Counsel:
Sheila L. Birnbaum
Douglas W. Dunham
Ellen P. Quackenbos
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

Patrick D. Cloud #06282672
HEYL, ROYSTER, VOELKER & ALLEN
Mark Twain Plaza III, Suite 100
105 West Vandalia Street, P.O. Box 467
Edwardsville, IL 62025

# REQUIRED

# APPENDIX

# TABLE OF CONTENTS

PAGE

1.  March 28, 2013 Order of the District Court Denying Defendants' Motions to
    Dismiss Plaintiffs' Class Action Complaint ............................................................. RA1

2.  December 4, 2013 Order of the District Court Denying Defendant State Farm
    Mutual Automobile Insurance Company's Motion to Alter or Amend the Court's
    Memorandum and Order Dated March 28, 2013 or, in the Alternative, for Certi-
    fication for Interlocutory Review Pursuant to 28 U.S.C. § 1292(B)........................... RA44

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**MARK HALE, TODD SHADLE**
**and CARLY VICKERS MORSE,**
**on behalf of themselves and all**
**others similarly situated,**

**Plaintiffs,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY, EDWARD**
**MURNANE, and WILLIAM G. SHEPHERD,**

**Defendants.**                                    **No. 12-0660-DRH**

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

### Introduction and Background

Pending before the Court are defendants' motions to dismiss plaintiffs'
class action complaint (Docs. 13, 32, and 61). Plaintiffs filed oppositions to the
motions (Docs. 50 & 63). Based on the complaint and the following, the Court
denies the motions to dismiss.

On May 29, 2012, plaintiffs Mark Hale, Todd Shadle and Carly Vickers
Morse, on behalf of themselves and all others similarly situated, filed a two-count
Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et
seq., class action complaint against State Farm Mutual Automobile Insurance

Company, Ed Murnane, William G. Shepherd and Citizens for Karmeier (Doc. 2).[1]

Count One alleges violations of 18 U.S.C. §1962(c) and Count Two alleges violations of 18 U.S.C. §1962(d) by conspiring to violate 18 U.S.C. §1962(c). According to the complaint and during the time periods alleged in the complaint, Hale is a citizen of New York; Morse is a citizen of Maryland and Shadle is a citizen of Texas. State Farm is a mutual non-stock company, organized and existing under the laws of Illinois, having its principal place of business in Bloomington, Illinois. Shepherd is a citizen of Illinois and was employed by State Farm. Murnane is a citizen of Illinois and was the president of the ICJL. Citizens for Karmeier is an Illinois organization and the political committee for Illinois Supreme Court Justice Lloyd Karmeier.[2]

   In the class action complaint, plaintiffs allege in their Introduction and Nature of Action section the following:

1. From 2003 to the present, State Farm, Murnane, Shepherd and Citizens for Karmeier (collectively, "Defendants") created and conducted the RICO

---

[1] Plaintiffs purport to represent the following class of individuals:
All persons who were members of the Certified Class in *Avery v. State Farm Mut. Auto. Ins. Co.*, No. 97-L-114 (First Jud. Cir. Williamson County, Ill.), more specifically described as:
      All persons in the United States, except those residing in Arkansas and Tennessee, who, between July 28, 1987, and February 24, 1998, (1) were insured by a vehicle casualty insurance policy issued by Defendant State Farm and (2) made a claim for vehicle repairs pursuant to their policy and had non-factory authorized and/or non-OEM (Original Equipment Manufacturer) 'crash parts' installed on their vehicles or else received monetary compensation determined in relation to the cost of such parts. Excluded from the class are employees of Defendant State Farm, its officers, its directors, its subsidiaries, or its affiliates.
      The following persons are excluded from the class: (1) persons who resided or garaged their vehicles in Illinois and whose Illinois insurance policies were issued/executed prior to April 16, 1994, and (2) persons who resided in California and whose policies were issued/executed prior to September 26, 1996.
[2] The officers listed for Citizens for Karmeier are David Luechtefeld and Gary S. Malaway. On September 26, 2012, plaintiffs filed a notice of voluntary dismissal as to Citizens for Karmeier (Doc. 54). That same day, the Court acknowledged the notice of voluntary dismissal and dismissed without prejudice Citizens for Karmeier as a defendant (Doc. 55).

enterprise described below to enable State Farm to evade payment of a $1.05 billion judgment affirmed in favor of approximately 4.7 million State Farm policyholders by the Illinois Appellate Court.

2. Plaintiffs bring this class action for damages against Defendants for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § § 1961 et seq., in particular, §§ 1962(c), (d); and 1964 for perpetrating a scheme through an enterprise specifically designed to defraud Plaintiffs and Class out of a $1.05 billion judgment.

3. Plaintiffs were each named plaintiffs, class representatives and class members in *Avery v. State Farm Mutual Automobile Insurance Company* ("*Avery Action*"), a class action litigated in the Illinois state court system. The *Avery Action* was certified as a class action, tried to jury verdict on a breach of contract claim, and tried to the Court on a claim under the Illinois Consumer Fraud Act ("ICFA"), resulting in a judgment of $1.18 billion.

4. The Illinois Appellate Court upheld a $1.05 billion judgment, sustaining the compensatory and punitive damages, and disallowing disgorgement damages as duplicative. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 321 Ill. App. 3d 269, 275, 292 (Ill. App. Ct. 5th Dist. 2001)(A true copy of the *Avery* Appellate Court decision is attached hereto as Exhibit "A").

5. On October 2, 2002, the Illinois Supreme Court accepted State Farm's appeal. The appeal was fully-briefed, argued and submitted as of May

2003, yet the matter remained under submission without a decision until August 18, 2005.

6. From the fall of 2003 until November 2004, Trial Judge Lloyd Karmeier ("Karmeier") and Appellate Judge Gordon Maag waged a judicial campaign for a vacant seat on the Illinois Supreme Court, ultimately resulting in Karmeier's election. In January 2005, having received reliable information that State Farm had exerted financial and political influence to achieve Karmeier's election, the *Avery* plaintiffs moved to disqualify Karmeier him [sic] from participating in the appeal of the *Avery Action*.

7. On or about January 31, 2005, State Farm filed its response to the disqualification motion, grossly misrepresenting the magnitude of State Farm's financial support (and the degree of participation by its executives, surrogates, lawyers and employees) of Karmeier's campaign.

8. Plaintiffs' motion was denied, and on August 18, 2005, with now-Justice Karmeier participating in the Court's deliberations and casting his vote in State Farm's favor, the Illinois Supreme Court issued a decision overturning the $1.05 billion judgment. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill2d 100, 835 N.E.2d 801 (Ill. 2005). (A true copy of this decision is attached hereto as Exhibit "B").

9. In December 2010, spurred in part by a recent United States Supreme Court decision vacating a West Virginia Supreme Court ruling in a case which featured similar facts, *i.e.*, involving a party's political and financial

influence to elect a justice whose vote it sought for its appeal, Plaintiffs'
counsel launched an investigation into State Farm's covert involvement in
the Karmeier campaign. The investigation, led by a retired FBI Special
Agent, uncovered evidence that to gain reversal of the $1.05 billion
judgment in the *Avery Action*, State Farm – acting through Murnane,
Shepherd and the Illinois Civil Justice League ("ICJL") – recruited
Karmeier, directed his campaign, had developed a vast network of
contributors and funneled as much as $4 million to the campaign. Then,
after achieving Karmeier's election, State Farm deliberately concealed all of
this from the Illinois Supreme Court while its appeal was pending.

10. On September 9, 2011, based on the information uncovered in the Reece
investigation, the *Avery* plaintiffs petitioned the Illinois Supreme Court to
vacate its decision overturning the $1.05 billion judgment. Responding on
September 19, 2011, State Farm again deliberately misrepresented its role
in directing and financing Karmeier's campaign. On November 17, 2011,
the Illinois Supreme Court denied Plaintiff's petition, without comment.

11. Reece's investigation had revealed, among other things, that, having been
ordered on April 5, 2001 by the Appellate Court to pay a 1.05 billion
judgment to the *Avery* class, and having succeeded in persuading the
Illinois Supreme Court to accept its appeal, State Farm had next developed
an elaborate plan to obtain reversal of the judgment. The initial
component of the plan was to recruit a candidate for the open Fifth District

seat on the Illinois Supreme Court for the November 2004 election who would support State Farm once its appeal came before the Court for disposition. Of course, there was no guarantee for State Farm that the appeal would not be decided *before* the November 2004 election, but the risk – *a $2 to $4 million investment for a possible $1.05 billion return* – was sufficiently minimal to make it a worthwhile gamble.

12. Defendants' scheme was developed and implemented in two distinct but related phases. In the first phase, State Farm sought to recruit, finance, direct, and elect a candidate to the Illinois Supreme Court who, once elected, would vote to overturn the $1.05 billion judgment. As Plaintiffs describe below, Defendants ultimately succeeded in obtaining this objective. Nine months after his election, Karmeier voted in favor of State Farm to overturn the $1.05 billion judgment of the Appellate Court.

13. Once the initial phase of the scheme had succeeded, the second phase featured two spirits of affirmative fraudulent activity, each furthered by use the of the U.S. mails: the 2005 and 2011 written misrepresentations to the Illinois Supreme Court. Specifically, this phase consisted of: (a) a continuing concealment of these facts to permit Karmeier to participate in the deliberations and cast his vote to overturn the judgment in 2005 (this was accomplished, in part, by State Farm's January 31, 2005 filing), and (b) withholding information from the Illinois Supreme Court that would have conceivably led it to vacate the decision in 2011 (this was

accomplished, in part, by State Farm's September 19, 2011 filing). Again, both filings were made through the U.S. mail, having been mailed to the Clerk of the Illinois Supreme Court and to Plaintiffs' counsel in several states, including Illinois, Louisiana, Mississippi and Tennessee.

14. From its inception, Plaintiffs and the other Class members in the *Avery Action* were the targets of and ultimate victims of the racketeering acts and the RICO enterprise – stripped of hundreds or even thousands of dollars each, seized of a class-wide judgment totaling $1.05 billion which compensated them for their losses – as a proximate result of Defendants' actions and the actions of the Enterprise participants.

15. In both the 2005 and 2011 filings, State Farm continued to hide and conceal its role in Karmeier's campaign, and deliberately misled the Court by omitting and concealing material facts regarding State Farm's role in Karmeier's campaign, which it directed through Shepherd, Murnane, the ICJL and Citizens for Karmeier, including: (a) recruiting Karmeier to be a candidate; (b) selecting Murnane to direct Karmeier's campaign; (c) creating Karmeier's judicial campaign contribution network; and (d) funding Karmeier's campaign.

16. To carry out and conceal this elaborate and covert scheme, Defendants created and conducted a continuing pattern and practice of activity through an association-in-fact Enterprise consisting of, among others, the following: Shepherd; Murnane; Murnane's non-profit organization, the ICJL; the

Shepherd-led ICJL Executive Committee ("Executive Committee"); Citizens for Karmeier (the campaign committee of Karmeier); JUSTPAC (the ICJL's political action committee); and the United States Chamber of Commerce ("US Chamber").

17. The ICJL and the Executive Committee, through Murnane and Shepherd, respectively, aided by the Citizens for Karmeier, functioned collectively as State Farm's vehicle to: (a) recruit Karmeier as a candidate; (b) direct Karmeier's campaign, (c) lend credibility to that campaign via endorsement, and (d) assure that Karmeier's campaign was well-funded. Campaign finance disclosures show that State Farm secretly funneled to Karmeier's campaign as much as $4 million (over 80%) of Karmeier's total $4.8 million campaign contributions. Led by Murnane and Shepherd, the ICJL and its Executive Committee were the "glue" that held together the many pieces of State Farm's judicial campaign contribution network.

18. The utilization of the U.S. mail throughout every stage of Defendants' scheme – to solicit, receive and direct contributions, to conduct conferences and disseminate communications and campaign strategies, and to conceal the extent of State Farm's role in Karmeier's campaign – was essential to the conduct of this Enterprise.

19. Various Enterprise participants and co-conspirators also used electronic mail to carry out the initial phase of Defendants' scheme throughout 2003-

2004 to communicate details regarding the direction, management and financing of the campaign to fellow Enterprise participants.

20. As the following paragraphs illustrate, the motivation for this seven-year-long-cover-up is both plausible and demonstrable. State Farm's misrepresentations and deception directed toward the Illinois Supreme Court by its mailed court-filings, and the continuing use of the mails by Defendants and Enterprise participants to carry out the scheme (to evade payment of the $1.05 billion judgment) constitutes a pattern and practice of knowing and deceptive conduct employed to effectuate and then to conceal State Farm's extraordinary support for Karmeier.

(Doc. 2, ps. 1-6).

Thereafter, defendants State Farm, Shepherd and Murnane all filed motions to dismiss based on the *Rooker-Feldman* doctrine; res judicata and/or collateral estoppel; untimeliness of the RICO claims; and failure to sufficiently plead violations of RICO and RICO conspiracy. Obviously, plaintiffs oppose the motions. As the motions are ripe, the Court rules as follows.[3]

### **Motion to Dismiss Standard**

The purpose of a Rule 12(b) motion to dismiss is not to decide the merits of the case. A Rule 12(b)(6) motion tests the sufficiency of the complaint, *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990), while a Rule 12(b)(1)

---

[3] On July 31, 2012, the Court stayed the initial disclosures and discovery pending ruling on the motions to dismiss (Doc. 30).

motion tests whether the Court has subject matter jurisdiction. *Long v. Shorebank Development Corp.,* 182 F.3d 548, 554 (7th Cir. 1999). In reviewing a motion to dismiss under either rule, the Court takes as true all factual allegations in plaintiffs' complaint and draws all reasonable inferences in their favor. *Killingsworth v. HSBC Bank Nevada, N.A.,* 507 F.3d 614, 618 (7th Cir. 2007); *Long,* 182 F.3d at 554.

To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed.R.Civ.P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O. C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, * * * 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[O]nce a

claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. A motion seeking dismissal based on *res judicata* or collateral estoppel under Rule 12(c) is evaluated using the same standard that governs a motion to dismiss under Rule 12(b)(6). See *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

Surviving a Rule 12(b)(1) motion to dismiss is more difficult. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). Federal courts are courts of limited jurisdiction; "they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). Pursuant to 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The plaintiff bears the burden of establishing that a district court has proper jurisdiction of an action. *Transit Express*, 246 F.3d at 1023. A defendant arguing that the plaintiff has not met this burden with respect to an action may move for dismissal under Rule 12(b)(1). A challenge based on the Court's lack of subject matter jurisdiction is properly brought in a motion under Federal Rule of Civil Procedure 12(b)(1), rather than as a motion to dismiss under Rule 12(b)(6). See also Fed.R.Civ.P. 12(h)(3) (court must dismiss for lack of subject matter jurisdiction). Under Rule 12(b)(1), consideration of evidence extrinsic to the pleadings is appropriate. *Hay v. Indiana State Bd. of Tax*

*Commis,* 312 F.3d 876, 879 (7th Cir. 2002) ("the district court had not only the right, but the duty to look beyond the allegations of the complaint to determine that it had jurisdiction to hear the landowners' claim").

Allegations of fraud in a civil RICO complaint are subject to Rule 9(b)'s heightened pleading standard, which requires a plaintiff to plead all averments of fraud with particularity. Fed.R.Civ.P. 9(b); *see Goren v. New Vision Intern., Inc.,* 156 F.3d 721, 726 (7th Cir. 1998). "While dismissal of a RICO claim is appropriate if the plaintiff fails to allege sufficient facts to state a claim that is plausible on its face, the adequate number of facts varies depending on the complexity of the case." *Kaye v. D'Amato,* 357 Fed.App'x 706, 710 (7th Cir. 2009). To plead with particularity means to allege "the who, what, when, where, and how" of the alleged fraud. *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 569 (7th Cir.2012) (quoting *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Financing Svc's, Inc.,* 536 F.3d 663, 668 (7th Cir. 2008)). With these principles in mind, the Court turns to address the merits of the motions.

## Analysis

### *Rooker-Feldman*

First, defendants all argue that the *Rooker-Feldman* doctrine requires plaintiffs' class action complaint to be dismissed for lack of subject jurisdiction as plaintiffs' federal claims are based on the same factual allegations as their previous state law claims. Specifically, defendants maintain that plaintiffs clearly satisfy the "state court loser" requirement in that plaintiffs were all named

plaintiffs in *Avery* and that plaintiffs' injury, that the Illinois Supreme Court's reversal of the $1.05 billion judgment, satisfies the second requirement. Thus, defendants contend that plaintiffs' alleged injuries stem from the Illinois Supreme Court judgment they lost and their claims are barred by *Rooker-Feldman*. Plaintiffs counter that *Rooker-Feldman* cannot apply to this case and that this case does not require the Court to review the merits of the judgment in *Avery*. In particular, plaintiffs assert that they neither seek review nor rejection of the *Avery* judgment and that plaintiffs' injuries were not caused by any action of the Illinois Supreme Court but solely as the result of these defendants' conduct. The Court agrees with plaintiffs.

The *Rooker–Feldman* doctrine, articulated by the Supreme Court in *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), is a jurisdictional rule directing that only the Supreme Court of the United States may review the judgment of a state court in civil litigation. *Freedom Mortg. Corp. v. Burnham Mortg., Inc.,* 569 F.3d 667, 670 (7th Cir. 2009); *Commonwealth Plaza Condominium v. City of Chicago,* 693 F.3d 743, 745 (7th Cir. 2012). The doctrine holds that federal district courts lack jurisdiction over lawsuits " 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commence and inviting district court review and rejection of those judgments.' " *Lance v. Dennis,* 546 U.S. 459, 464, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006)

(quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)); *see also Freedom Mortg. Corp.*, 569 F.3d at 671; *Kelley v. Med–1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008). Thus, the doctrine " 'precludes lower federal court jurisdiction over claims seeking review of state court judgments ... [because] no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment.' " *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004) (quoting *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002)).

The *Rooker–Feldman* doctrine still deprives lower federal courts of jurisdiction if the claims made in federal court are "inextricably intertwined" with the state court judgment. *Feldman*, 460 U.S. at 486; *Brokaw*, 305 F.3d at 664. Although "'inextricably intertwined' is a somewhat metaphysical concept," the key issue is whether the district court is being asked to review the state court decision, and this "determination hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Taylor*, 374 F.3d at 533. In other words, the *Rooker–Feldman* doctrine is inapplicable when the alleged injury is distinct from the judgment. *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008).

If a claim is "inextricably intertwined" with a state court decision, the court must then determine whether the plaintiff had a "reasonable opportunity to raise

the issue in the state court proceedings." *Taylor*, 374 F.3d at 533. To establish that there was no reasonable opportunity to raise an issue in state court, a plaintiff must point to "some factor independent of the actions of the opposing party that precluded the litigants from raising their federal claims during the state court proceedings." *Long*, 182 F.3d at 558. A plaintiff may then proceed in federal court if she can make this showing. *Taylor*, 375 F.3d at 533.

If, on the other hand, the claimed injury is independent of the state-court judgment, or if the federal claim is based on "a prior injury that a state court failed to remedy," *Rooker–Feldman* does not bar the claim. *See Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 701–02 (7th Cir.1998).

Here, at this stage of the pleadings and as accepting the allegations as true as the Court must, the Court concludes that the complaint does not request that the *Avery* judgment be overturned or reviewed. Plaintiffs' federal claims allege separate injuries and violations that are separate from the *Avery* judgment. Plaintiffs are not asking for the Illinois Supreme Court's judgment to be overturned or reviewed. Nor does it appear that plaintiffs are attacking the merits of the *Avery* judgment. It appears from the complaint that they are asserting claims for an independent legal wrong: the illegal acts or omissions by defendants. The complaint contains specific allegations that State Farm and others, including Shepherd and Murnane, conspired with others to ensure a predetermined decision in *Avery*. Particularly, plaintiffs are challenging defendants' actions in procuring the *Avery* judgment. Plaintiffs allege that the

improper actions of defendants during and after the *Avery* proceedings in the Illinois Supreme Court – specifically defendants' mail fraud containing misrepresentations to the Illinois Supreme Court– resulted in the denial of their constitutional rights and the related injury. They do not allege that they have been injured by the Illinois Supreme Court. Instead they allege that defendants' conduct and Justice Karmeier's failure to step aside prevented them from raising their claims before the full Illinois Supreme Court. Based on these allegations, the Court finds that the *Rooker-Feldman* doctrine does not bar this Court's exercise of jurisdiction. The Court concludes that it has subject matter jurisdiction in this case.

### Res Judicata and Collateral Estoppel

Next, defendants argue that *res judicata* and/or collateral estoppel bar plaintiffs' claims here as these same claims and issues were litigated in the Illinois Supreme Court and cannot be relitigated again in this cause of action. Defendants maintain that the issue of the proprietary of Justice Karmeier's participation in *Avery* and the legitimacy of the judgment in that case were finally and conclusively litigated and adjudicated by the Illinois Supreme Court. Plaintiffs counter that theory of their case is that defendants and others committed a "new wrong" separate and apart from the *Avery* case. Specifically, that these cases do not contain the same causes of action as *Avery* deals with State Farm's failure to properly pay for replacement automobile parts and this

cause of action deals with defendants fraudulently reversing a judgment by colluding to elect a judge.

The doctrine of *res judicata*, also known as claim preclusion, prevents relitigation of matters that were fully litigated in an earlier suit that resulted in a judgment on the merits. *Groesch v. City of Springfield*, 635 F.3d 1020, 1029 (7th Cir. 2011). Because of the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give a state court judgment the same preclusive effect that the court rendering the judgment would give it. *Haber v. Biomet, Inc.*, 578 F.3d 553, 556 (7th Cir. 2009); *Licari v. City of Chicago*, 298 F.3d 664, 666 (7th Cir. 2002). Thus, when examining whether an Illinois court judgment bars a federal lawsuit because of *res judicata* the Court looks to the preclusive effect an Illinois court would give the judgment in question. *Groesch*, 635 F.3d at 1029; *Licari*, 298 F.3d at 666.

Under Illinois law, *res judicata* applies if the prior decision (1) was a final judgment on the merits rendered by a court of competent jurisdiction, (2) involved the same parties or their privies, and (3) constituted the same cause of action as the current suit. *Nowak v. St. Rita High Sch.*, 197 Ill.2d 381, 258 Ill.Dec. 782, 757 N.E.2d 471, 477 (Ill. 2001); *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill.2d 285, 176 Ill.Dec. 874, 602 N.E.2d 820, 825 (Ill.1992); *Groesch*, 635 F.3d at 1029.

Illinois uses a transactional approach to determining whether different claims constitute the same cause of action for *res judicata* purposes. *River Park*,

*Inc. v. City of Highland Park,* 184 Ill.2d 290, 234 Ill.Dec. 783, 703 N.E.2d 883, 893 (Ill.1998); *see Garcia v. Village of Mt. Prospect,* 360 F.3d 630, 637 (7th Cir.2004). Under the transactional approach, "separate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park,* 234 Ill.Dec. 783, 703 N.E.2d at 891; *accord Rodgers v. St. Mary's Hosp.,* 149 Ill.2d 302, 173 Ill.Dec. 642, 597 N.E.2d 616, 621 (Ill.1992)(*res judicata* bars suit if "the same facts were essential to maintain both actions" or if "a single group of operative facts gives rise to the assertion of relief"). As a corollary to this rule, Illinois observes the doctrine of merger and bar which precludes the relitigation not only of claims that were *actually* litigated but also claims that *could have been* litigated. *People ex rel. Burris,* 176 Ill.Dec. 874, 602 N.E.2d at 825; *River Park,* 234 Ill.Dec. 783, 703 N.E.2d at 889 *see Garcia,* 360 F.3d at 639.

28 U.S.C. § 1738's "full faith and credit" requirement also encompasses the equitable principle of collateral estoppel. Generally, collateral estoppel prohibits the relitigation of any settled issue that was necessary to a prior final judgment. Under Illinois law the "minimum requirements" for application of collateral estoppel are:

> the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication.

*Gumma v. White,* 216 Ill.2d 23, 295 Ill.Dec. 628, 833 N.E.2d 834, 843 (2005).

Defendants argue that *res judicata* and/or collateral estoppel bars this lawsuit as plaintiffs have already fully litigated their claims regarding Justice Karmeier's participation in *Avery* and those claims were conclusively rejected by the Illinois Supreme Court. Specifically, as to *res judicata*, defendants assert that all three elements are met in that (1)that the Illinois Supreme Court issued a final judgment on the merits, reversing the $1.05 billion judgment against State Farm, and rejected repeated challenges to Justice Karmeier's participation and that the United States Supreme Court denied plaintiffs' petition for certiorari; (2) that plaintiffs allege in the complaint the same core of operative facts that they alleged unsuccessfully in the Illinois and the United States Supreme Courts in challenging *Avery*; and (3) that the identity of the parties is satisfied as the plaintiffs are the same and State Farm was an adverse party in the prior proceedings as it is an adversary party in this case and that defendants Shepherd and Murnane are in privity. As to collateral estoppel, defendants argue that the issue of the propriety of Justice Karmeier's participation *Avery* and the legitimacy of the *Avery* judgment were finally and conclusively litigated and adjudicated by the Illinois Supreme Court. Plaintiffs counter that the first element of *res judicata* has not been met as the *Avery* judgment was entered through fraud and, thus, plaintiffs contend that the *Avery* judgment is void. Plaintiffs argue that the judgment in *Avery* was void because it was procured through fraud based on defendants' conduct. Plaintiffs assert that that defendants committed a "new wrong" separate and apart from *Avery*, thus the cases do not present the same causes of action or

operative facts. Further, plaintiffs argue that defendants' statements that were made to the Illinois Supreme Court and to plaintiffs' counsel prevented plaintiffs from exhibiting their case and circumvented an adjudication on the merits of the *Avery* appeal.

The Court finds that making such factual determinations regarding *res judicata* and/ or collateral estoppel at this stage in the proceedings is not proper and declines to do so. It is unclear from the record before the Court what merits were reached regarding the issues contained in plaintiffs' complaint at bar and it is unclear whether plaintiffs had a full and fair opportunity to litigate those issues during the *Avery* proceedings before the Illinois Supreme Court. The Court concludes that these arguments are better suited for discussion and decision after discovery has been completed.

### RICO CLAIM

#### Timeliness of Plaintiffs' claims

Next, defendants assert that plaintiffs' RICO claims are untimely. Specifically, defendants argue that plaintiffs' alleged claims accrued in 2005 with the Illinois Supreme Court's decision in *Avery*, or at the latest, in 2006 with the United States Supreme Court's denial of certiorari, and the limitations period expired in either 2009, or 2010, well before plaintiffs' filed their complaint on May 29, 2012. Plaintiffs counter that while they may have been aware of some of the background facts of the alleged pattern of racketeering, they had not been injured until 2011 and no claim for a RICO violation could begin to accrue until it existed.

Plaintiffs allege that they were not injured until at least September 19, 2011, when State Farm mailed the second of its briefs falsely denying its substantial role in Justice Karmeier's election. (Doc. 2, ¶¶ 101-103). Thus, plaintiffs maintain that they could not have filed their RICO action before September 19, 2011 and that their complaint is timely.

RICO does not provide an express statute of limitations for actions brought under its civil enforcement provision. However, the Supreme Court has held that civil RICO claims should be governed by the same four-year statute of limitations period that governs closely related claims under the Clayton Act. *See Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 150–56, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (analyzing the statutory relationship and legislative history of 18 U.S.C. § 1964 and the Clayton Act, 15 U.S.C. § 15); *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP,* 559 F.3d 671, 674 (7th Cir. 2009) ("The statute of limitations for a civil RICO cause of action is a fairly generous four years.").

The statute of limitations is an affirmative defense, *see* Fed.R.Civ.P. 8(c), and need not be addressed by plaintiffs in their complaint. *See U.S. Gypsum Co. v. Indiana Gas Co., Inc.,* 350 F.3d 623, 626 (7th Cir. 2003); *see also United States v. N. Trust Co.,* 372 F.3d 886, 888 (7th Cir. 2004) ("[A] complaint states a claim on which relief may be granted whether or not some defense is potentially available."). Therefore, complaints need not anticipate defenses, and the resolution of the statute of limitations comes after the complaint stage. *See*

*Trust Co.,* 372 F.3d at 888 (citing *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)). This general rule is subject to an important exception: the statute of limitations issue may be resolved definitely on the face of the complaint when the plaintiff pleads too much and admits definitively that the applicable limitations period has expired. *See id; Gypsum,* 350 F.3d at 626 ("A litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense...."). Therefore, this Court must determine whether plaintiffs have pleaded themselves out of court based on the allegations in its complaint.

A plaintiff's RICO claim does not accrue until after the alleged defendants have engaged in a "pattern of racketeering" activity. *McCool v. Strata Oil Co.,* 972 F.2d 1452, 1465 (7th Cir. 1992) ("There must, of course, be a pattern of racketeering before the plaintiff's RICO claim accrues, and this requirement might delay accrual until after the plaintiff discovers her injury."). Therefore, the RICO statute of limitations begins to accrue when both a "pattern of racketeering"-i.e. two predicate acts-has occurred, and when the plaintiff knows or should know he or she was injured. The Court views the allegations in the complaint in the light most favorable plaintiffs and accepts for the purposes of this analysis that each alleged predicate act (the alleged count of mail fraud) is plead with sufficient particularity and would indeed support plaintiffs' allegation of a predicate act of "racketeering" under RICO. The four year statute of limitations for civil RICO claims does not begin to run until a plaintiff knows or should have known he was

injured. *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004); McCool, 972 F.2d at 1464; *see also Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 186–87, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997) (rejecting "last predicate act" rule for determining accrual). This rule applies even where the plaintiff has not yet discovered the pattern. *See Rotella v. Wood*, 528 U.S. 549, 554 n. 2, 555, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000) (rejecting "last predicate act" rule and "injury and pattern discovery rule").

The Court finds the situation presented here is not one where the plaintiffs have "plead itself out of court" based on the allegations in the complaint. The complaint describes defendants' actions in detail from conceiving the plan to elect Justice Karmeier in late 2003, to how the Karmeier campaign was directed, supported and funded by State Farm and others, to Justice Karmeier's election, to State Farm's first act of mail fraud on January 31, 2005, to Justice Karmeier's decision to participate in the *Avery* decision in 2005, and leading up to State Farm's second act of mail fraud on September 19, 2011. Thus, according to plaintiffs' complaint, they were not injured until at least September 19, 2011, when State Farm mailed the second of its briefs falsely denying its role in Justice Karmeier's election. Plaintiffs filed their complaint on May 29, 2012, well within the four year statute of limitations.

Assuming *arguendo* that that the claims are time-barred, the Court addresses fraudulent concealment and equitably tolling. Defendants argue that it is clear from the complaint and their court papers in 2005 and 2006 that

plaintiffs in 2006 at the latest did know the facts that they are now relying on to establish their RICO claims. Further, defendants argue that plaintiffs failed to investigate these claims in that they admitted that they waited until December 2010 to investigate and that nothing prevented plaintiffs from starting that investigation years sooner. At this stage of the pleadings, the Court rejects this argument.

While the doctrine of equitable tolling does not require fault on the part of the defendant, it is applied sparingly and only where extraordinary circumstances beyond the litigant's control prevented timely filing. *Asher v. Chase Bank United States, N.A.*, 310 Fed. Appx. 912, 917 (7th Cir. 2009); *see also United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). Equitable tolling is frequently confused with fraudulent concealment, a subset of equitable estoppel. *Shropshear v. Corp. Counsel of Chi.*, 275 F.3d 593, 595 (7th Cir. 2001); *see also Asher*, 310 Fed. Appx. at 917. However, the Seventh Circuit has clearly held that equitable tolling and fraudulent concealment are two separate doctrines, *see Shropshear*, 275 F.3d at 595.

Unlike equitable estoppel, equitable tolling "applies when the plaintiff, though diligent, could not have obtained the information necessary to file a claim before the end of the limitations period." *Asher*, 310 Fed. Appx. at 917. Under the doctrine of equitable tolling, "even if a defendant is not responsible for the plaintiff's failure to sue within the limitations period, the [plaintiff] can get an extension of time within which to sue if it would have been unreasonable to expect

him to be able to sue earlier." *Shropshear*, 275 F.3d at 595. However, "an essential element [of such an extension] is that the plaintiff have exercised due diligence; in other words that he have acted reasonably." *Id* . Furthermore, the plaintiffs bear the burden of demonstrating that the applicable statute of limitations should be tolled. *Asher*, 310 Fed. Appx. at 917. While fraudulent concealment implies deliberate efforts by the defendant to prevent the plaintiff from suing within the applicable statute of limitation, which efforts are above and beyond the wrongdoing upon which the plaintiff's underlying claim is based. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452 (7th Cir. 1990).

In their complaint, plaintiffs allege that State Farm's January 31, 2005 mailing "failed to disclose the prominent role played by Shepherd in forming the ICJL, as a member of the ICJL Executive Committee (which engineered Karmeier's candidacy, endorsed him, and insured a substantial flow of case from State Farm Executives, employees, and corporate and political partners), as a central figure in Karmeier's campaign." (Doc. 2, ¶ 53). Plaintiffs further assert that "State Farm falsely denied Murnane's involvement in Karmeier's campaign and declared 'Mr. Murnane ... was not Karmeier's campaign manager or campaign finance chairman and was not employed by Karmeier's campaign ....' *See* State Farm's Oppostion, at pp. 15-16." (Doc. 2, ¶ 54 & 103). Also, plaintiffs allege that it was not until September 11, 2011 that State Farm "conceded that Shepherd was a charter member of the Executive Committee, thus unveiling the missing [sic] connecting State Farm to the ICJL, to JUSTPAC, to Murnane, to the

discarded emails, and finally, to Karmeier's campaign." (Doc. 2, ¶ 106). According to plaintiffs, this concession provided the context: "Shepherd's position explains Murnane's role in Karmeier's campaign, how State Farm was able to use the ICJL and JUSTPAC as vehicles to raise nearly $1.2 million and funnel it to Citizens for Karmeier, and why the Executive Committee supported Karmeier's candidacy from "Day One" and gave him its "official endorsement," signaling other ICJL members that Karmeier was State Farm's choice." (Doc. 2, ¶ 107). Further, plaintiffs' complaint alleges: "Not only did State Farm fail to utter a single word about Shepherd's position on the Executive Committee until September 19, 2011, it also failed to explain why it did not do so." (Doc. 2, ¶108). Based on these allegations contained in the complaint, the Court finds that the limitations should be tolled until September 19, 2011 and the claims are not time-barred. Therefore, dismissal for failure to file a complaint within the statute of limitations period is not appropriate at this stage in the proceedings.

Defendants next argue that plaintiffs' RICO claims fail as a matter of law in that they lack standing because they have not adequately alleged causation; have not adequately pled a pattern of racketeering activity; the allegations of an enterprise are deficient as a matter of law and have failed to allege a nexus between the purported activity and the affairs of the enterprise. The Court addresses causation first.

**Proximate Cause**

Defendants argue that plaintiffs' RICO claims fail for lack of standing because they have not alleged causation. In particular, defendants argue there was every expectation that *Avery* would be decided long before the newly elected justice took office and that plaintiffs' allegations that State Farm was taking a "long shot" do not solve the lack of direct proximate causal relationship. Further, defendants contend that Justice Karmeier did not cast the deciding vote as to the unanimous holding in *Avery* that there could be no nationwide contract and ICFA classed, thus his participation did not cause their injury. Defendants also argue that plaintiffs fail to allege facts to support their contention that the purported contributions to Justice Karmeier's campaign influenced his vote on the *Avery* case. Plaintiffs respond that their complaint sufficiently links their injuries to defendants' actions.

Under RICO, "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court...." 18 U.S.C. § 1964(c). "A cause of action under § 1964(c) requires a plaintiff to plead '(1) an injury in its business or property (2) by reason of (3) the defendants' violation of section 1962.'" *DeGuelle v. Camilli*, 664 F.3d 192, 198 (7th Cir. 2011)(quoting *RWB Servs., LLC v. Hartford Computer Grp., Inc.*, 539 F.3d 681, 685 (7th Cir. 2008)) (internal quotation marks and brackets omitted).

Section 1962(c) makes it unlawful for an employee of an enterprise engaged in interstate commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. 1962(c).  To state a claim for relief under 1962(c), plaintiffs must allege "(1) conduct (2) of an enterprise (3) through a pattern of racketeering activity." *DeGuelle*, 666 F.3d at 199 (quoting *United States v. Shamah*, 624 F.3d 449, 454 (7th Cir. 2010), cert denied, --- U.S. --- 131 S.Ct. 1529, (2011)).

"The phrase 'injured in business or property' [in § 1964(c) ] has been interpreted as a standing requirement—rather than an element of the cause of action—which must be satisfied in order to prevail on a RICO claim." *Evans v. City of Chicago*, 434 F.3d 916, 924 (7th Cir. 2006) (citation omitted).   Likewise, "the causation component of § 1964(c)—whether an alleged RICO injury was caused 'by reason of' a violation of the statute—has also been considered a component of standing." *Id.*; *RWB Servs.*, 539 F.3d at 686; *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 126 S.Ct. 1991, 164 L.Ed.2d 720 (2006) (holding that a plaintiff does not have standing to sue for a civil RICO violation unless its injury was proximately caused by the alleged violation).

In *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992), the Supreme Court concluded that the "by reason of" language in 18 U.S.C. § 1964(c) requires a showing that the defendant's violation not only was the "but-for" cause of the plaintiff's injury, but the proximate cause as well. *See Id.* at 267–268. In so holding, the Court explained that it used the term " 'proximate cause' to label

generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts." *Id.* at 268.  As set forth in *Holmes,* in a civil RICO action, proximate cause is determined by examining whether a direct relationship exists between the injury asserted and the injurious conduct alleged. *See Id.* at 268–269 (describing the interpretation federal courts had given to the term in the past and holding that the same interpretation applies to section 1964(c) the Court stated that "a plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand too remote a distance to recover." *Id. See also Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451 (2006) ("When a court evaluates a RICO claim for proximate causation the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.").

The Court in *Holmes* discussed three policy considerations for requiring a direct relationship between the alleged harm and the alleged injurious conduct:

> First, the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors. Second, quite apart from problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries. And, finally, the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely.

*Holmes,* 503 U.S. at 269–270 (internal citations omitted).

Here, in their complaint, plaintiffs allege:

"Defendants' motive in conducting the Enterprise ... was to deceive the Illinois Supreme Court into believing that State Farm's support of Karmeier's campaign was minimal. The scheme was designed and implemented for the purpose of recruiting a candidate, financing that candidate, electing that candidate and effectively concealing its support for that candidate. State Farm's efforts to escape liability to pay the $1.05 billion judgment rested on the continued success of every aspect of this scheme.

(Doc. 2, ¶ 98). Further, the complaint alleges

"The scheme was designed to achieve, and did achieve, its intended result: approximately 4.7 million State Farm policyholders suffered damage to their business and property, seized of the rightful damages awarded to them by the Avery Action judgment.

(Doc. 2, ¶ 99). Thus, plaintiffs' allege that defendants acted to defraud plaintiffs out of their property. Specifically, plaintiffs allege that defendants perpetrated a scheme to defraud plaintiffs of their property and the alleged scheme took place in two phases: (1) State Farm decided to select its own candidate for the vacant Illinois Supreme Court seat and place him on the Court to insure a decisive vote and (2) to keep the candidate on the bench despite State Farm's support. Plaintiffs allege that State Farm used the U.S. mail to conceal these facts to permit Karmeier to participate in the *Avery* decision and to make misrepresentations to the Illinois Supreme Court. These mailings took place on January 31, 2005 with its filing in the Illinois Supreme Court and on September 19, 2011 with its filing in the Illinois Supreme Court. Based on these allegations, the Court finds that plaintiffs have alleged a set of facts and cognizable damages that are sufficient to demonstrate that defendants' alleged acts proximately caused a loss to plaintiffs.

As to the injury, plaintiffs allege that defendants recruited Karmeier to run for the vacant seat and together defendants directed Karmeier's campaign. Plaintiffs allege that State Farm engineered $4,200,417 of the $4,800,000 raised by Karmeier's campaign. Plaintiffs allege that thereafter, Justice Karmeier refused to recuse himself from the appeal and voted to overturn plaintiffs' $1.05 billion judgment. Based on the record before the Court, the Court finds that plaintiffs have sufficiently alleged injury to business or property element and that they have standing to pursue the RICO claims.

**Pattern of Racketeering Activity**

As to pattern of racketeering activity, defendants contend that plaintiffs' allegations are based upon a single purported "fraudulent scheme" to "obtain, exert, and deliberately misrepresent its control over and extraordinary financial support of Karmeier's campaign" and to "suppress and conceal the level of such control and support from the Illinois Supreme Court," in order to obtain "the Karmeier vote to gain reversal of the $1.05 billion judgment." Defendants further contend that plaintiffs do not allege a threat of continuing future racketeering activity and do not allege facts that would show either closed or open-ended continuity. Plaintiffs maintain that their complaint alleges predicate acts of mail fraud occurring within a ten-year period, beginning approximately November 2003 and continuing at least through September 19, 2011. The Court agrees with plaintiffs.

The Seventh Circuit has acknowledged that "the tremendous breadth of the language of civil RICO has caused a large number of garden-variety fraud claims to be brought in federal court." *Morgan v. Bank of Waukegan*, 804 F.2d 970, 973 (7th Cir. 1986). However, to prevent RICO from being misused as a vehicle for federalizing state law fraud claims, the courts have sought to limit RICO's reach by requiring plaintiffs to demonstrate that defendants engaged in a sufficiently continuous "pattern of racketeering activity." *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240–42, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Gamboa v. Valez*, 457 F.3d 703, 710 (7th Cir. 2006). A pattern of racketeering activity requires at least two predicate acts of racketeering within a ten year period. 18 U.S.C. § 1961(5); *see also Vicom, Inc. v. Harbirdge Merchant Services, Inc.*, 20 F.3d 771, 779 (7th Cir. 1994).   Establishing a pattern also requires a showing of the "continuity plus relationship" test: that the racketeering predicates are related to one another and pose a threat of continued criminal activity. *See Northwestern Bell*, 492 U.S. at 237, 109 S.Ct. 2893 (holding that the definitions set forth in 18 U.S.C. § 1961 do "not so much define a pattern of racketeering activity as state a minimum necessary condition for the existence of such a pattern"); *see also Gamboa*, 475 F.3d at 706 ("[I]solated instances of criminal behavior, not presenting at least some threat of future harm, cannot meet § 1962(c)'s continuity element."). This approach recognizes that in enacting RICO, "Congress was concerned ... with long-term criminal conduct." *Vicom*, 20 F.3d at 780. In order to demonstrate sufficient relationship and continuity among

the predicate acts, the plaintiff must establish either (1) a series of related predicate acts extended over a substantial period of time—also known as "closed-ended continuity," or (2) that the past predicate acts by their very nature project into the future with a threat of repetition—known as "open-ended continuity." *See Northwestern Bell*, 492 U.S. at 241–242; *Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 473 (7th Cir. 2007).

The Court finds that plaintiffs have alleged a pattern of racketeering activity. Plaintiffs allege that defendants' scheme was two-fold: (1) to elect Justice Karmeier and gain his vote to undo the $1.05 billion judgment and (2) then to get away with it in the face of a challenge. The complaint alleges that the conduct spanned a seven year period beginning no later than January 31, 2005 when State Farm first misrepresented its involvement in Karmeier's recruitment, campaign and election. Plaintiffs also allege that State Farm continues to conceal the scope of its involvement. Further, plaintiffs' complaint contains the two predicate acts of mail fraud within a ten year time frame: the January 31, 2005 mailing and the subsequent September 19, 2011 mailing. Plaintiffs have alleged continuity and a pattern of racketeering.

**RICO Enterprise**

Defendants maintain that the allegations of enterprise are deficient as a matter of law. Specifically, defendants maintain that plaintiffs have not provided a plausible factual basis for asserting that the members of the enterprise "associated together for the common purpose of allowing State Farm to evade

$1.05 billion judgment" as the common purpose was simply to support Justice Karmeier's election. Further, defendants assert that plaintiffs fail to allege the necessary relationships of enterprise members and longevity.  Plaintiffs counter that they have sufficiently identified the enterprise members, their common purpose and their relationships.

The RICO statute defines an "enterprise" as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.' " *Boyle v. United States,* 556 U.S. 938, 944, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009) (citing 18 U.S.C. § 1961(4)). A RICO enterprise is not limited to "business-like entities," but rather requires "an ongoing organization, formal or informal" that "function[s] as a continuing unit." *Id.* at 945, 950, 129 S.Ct. 2237 (quoting *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)). "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to continue to pursue the enterprise's purpose." *Id.* at 946, 129 S.Ct. 2237.  It does not require "a structural hierarchy, role differentiation, a unique modus operandi, a chain of command, professionalism and sophistication of organization, diversity and complexity of crimes, membership dues, rules and regulations, uncharged or additional crimes aside from predicate acts, an internal discipline mechanism, regular meetings regarding enterprise affairs, an enterprise name, [or] induction or initiation

ceremonies and rituals." *Boyle*, 556 U.S. at 948, 129 S.Ct. 2237 (internal

quotation marks omitted).

Here, the plaintiffs allege the following as to enterprise:

"The Enterprise is an association-in-fact of State Farm executives and
employees, including Shepherd, as well as Murnane, Citizens for Karmeier,
political operatives, a political action committee, political organizations, an
Executive Committee of one such organization which wields significant political
influence in Illinois, a political campaign committee, insurance and business
lobbyists and the US Chamber.   The Enterprise is distinct from, albeit
conducted, by State Farm, through Shepherd, Murnane and the ICJL, and has
an ongoing existence.  Specifically, participants in the Enterprise include: …."

(Doc. 2, ¶ 30).  The complaint names and describes the relationships between

State Farm and fifteen other individuals and/or organizations that are alleged

participants in the enterprise.[4]  These allegations sufficiently describe the nature

of the enterprise and the relationships between State Farm and the enterprise

members and the longevity.   Based on those allegations, there is a plausible

factual basis for asserting that the members of the enterprise "associated together

for the common purpose of allowing State Farm to evade the 1.05 billion

judgment." Pursuant to *Boyle,* these allegations are sufficient to infer the existence

of a RICO enterprise. 556 U.S. at 946–948, 129 S.Ct. 2237.

---

[4] For instance, the complaint describes Ed Rust as a participant.  It alleges he is "State Farm's
CEO and played an important role in the US Chamber committee that targeted the Karmeier-Maag
race in 2004 and steered millions of dollars to Illinois to elect Karmeier.  Further, as to Al
Admonite, another participant, the complaint alleges that he was "hired by Murnane as a
consultant to Karmeier's campaign, paid by the campaign.  Currently, he is Vice President and
Director of Government Relations.  Admonite confirmed Murnane's control over Karmeier's
campaign and that Murnane had provided a substantial portion of the funding for the campaign --
$1.19 million through JUSTPAC."  It also alleges that David Leuchtefeld was "'chairman' of
'Citizens for Karmeier' whose discarded emails evidence the inner-workings of the Karmeier
campaign."

Next, both Shepherd and Murnane argue that plaintiffs have not alleged a nexus between the purported racketeering activity and the affairs of the enterprise. Specifically, Shepherd and Murnane contend that plaintiffs have not alleged facts showing that they personally committed any of the alleged predicate acts, that they were not parties to *Avery* and that plaintiffs have not alleged any facts showing that their relationships with State Farm facilitated the representations made by State Farm during the *Avery* case. Both defendants maintain that their alleged actions are "protected political speech" under the First Amendment. Plaintiffs respond that the nexus is well established in their complaint. The Court agrees with plaintiffs.

As stated previously, the RICO statute provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...," and the RICO conspiracy statute makes it unlawful to conspire to violate this provision. <u>18 U.S.C. § 1962(c)</u> & <u>(d)</u>. The Supreme Court has ruled that

> [i]n order to "participate, directly, or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs. Of course, the word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but some part in directing the enterprise's affairs is required.

*Reves v. Ernst & Young,* 507 U.S. 170, 179, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993) (footnote *omitted*). The Court rejected, however, an interpretation that

would require a RICO defendant to have *"significant control* over or within an enterprise." *Id.* at 179 n. 4 (emphasis in original; internal quotation marks omitted). Rather, the Court held that the statute requires proof of participation in the operation or management of the enterprise. *Id.* at 179.

The complaint alleges the existence of multiple people, including Murnane and Shepherd acting in concert over a period of time with the purpose of perpetuating the RICO fraud. The acts alleged have a purpose:  to recruit, elect Karmeier to the Illinois Supreme Court and make possible his participation in the *Avery* decision to rule in State Farm's favor.  The complaint alleges that Shepherd helped create the ICJL, hired Murnane as the ICJL's president, and served as a member of the ICJL's Executive Committee.  The complaint also alleges that Shepherd recruited Karmeier on State Farm's behalf to be a candidate and that he insured a substantial amount of cash flow to Karmeier from State Farm executives, employees, and corporate and political partners. As to the allegations against Murnane, the complaint states: "A July 2003 *Forbes Magazine* article quoted Murnane as saying the Illinois Supreme Court is 4-3 "anti-business" and that ICJL would target the 2004 Fifth District race to change the composition of the Court.  The article cites the *Avery Action* – which was already pending before the Illinois Supreme Court. (*See* Forbes article, Exhibit D hereto).  A second article from 2004 stated that Murnane viewed the *Avery* verdict against State Farm as part of the problem with courts in the Fifth District." (Doc. 2, ¶ 64). Further, the complaint alleges that Murnane recruited Karmeier, directed the

Karmeier campaign and was used by State Farm as a middleman through which State Farm could funnel millions of dollars to the campaign. (Doc. 2, ¶¶ 65-90). Clearly, the allegations directed against both Shepherd and Murnane are sufficient as to their participation in the operation and/or management of the enterprise.

As to defendants' protected First Amendment argument, the Court finds that this argument is best addressed at the summary judgment stage. As the Court stated previously "[o]rders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses, for plaintiffs need not anticipate and attempt to plead around all potential defense. *Xechem, Inc. v. Bristol–Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). A "[c]omplaint need not contain *any* information about defenses and may not be dismissed for that omission." *Id.* (emphasis in the original). Nevertheless, a plaintiff can plead itself out of court when it "admits all the ingredients of an impenetrable defense" *Id.*

Thus, whether defendants' actions are in fact false or misleading, as may be necessary to determine the existence of any First Amendment protection, is a factual inquiry beyond the scope of this motion. The Court finds that whether defendants' actions are protected by the First Amendment will ultimately require resolution of a number of factual issues which are more appropriately reserved for resolution at summary judgment or trial on a full factual record.

**Predicate Acts**

Defendants also argue that State Farm's 2005 and 2011 mail submissions to the Illinois Supreme Court in response to plaintiffs' motions to disqualify

Justice Karmeier cannot as a matter of law serve as RICO predicate acts. Further, defendants argue that the predicate acts lack factual development. Plaintiffs counter that they have sufficiently described a scheme or artifice to defraud through the use of the mails.

First, defendants maintain that the *Noerr-Pennington* doctrine is applicable in this case and, thus, plaintiffs' predicate acts are not actionable as serving litigation documents cannot constitute mail fraud.[5] The Court rejects this argument based on the sham exception at this stage of the proceedings. As the Seventh Circuit stated in *Mercatus*, "there is little doubt that fraudulent misrepresentations may render purported petitioning activity a sham not protected from antitrust liability." *Mercatus*, 834 F.3d at 842. (citations omitted). "[A] a misrepresentation renders an adjudicative proceeding a sham only if the misrepresentation (1) was intentionally made, with knowledge of its falsity; and (2) was material, in the sense that it actually altered the outcome of the proceedings." *Id.* at 843 (citations omitted). Further, defendants cite *United States v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002) for the proposition that "servicing legal documents by mail" cannot constitute mail fraud. However, the Court notes that the accurate holding is: "Similarly, we held in *Pendergraft* that, **absent an intent to deceive** the victim, the mailing of litigation documents, even

---

[5] "The First Amendment of the Constitution states that Congress shall make no law abridging the 'right of the people to peaceably assemble, and to petition the Government for redress of grievances.' Under the *Noerr-Pennington* doctrine, federal antitrust laws have been interpreted to protect these First Amendment rights by petitioning activity from liability." *Mercatus Group, LLC v. Lake Forest Hosp.*, 641 F.3d 834, 837 (7th Cir. 2011). "The doctrine extends absolute liability under antitrust laws to "businesses and other associations when they join together to petition legislative bodies, administrative agencies, or courts for action that may have anticompetitive effects." *Id.* at 841.

perjurious ones, did not violate the mail-fraud statute.'" *Raney v. Allstate Insurance Co.*, 370 F.3d 1086, 1088 (11th Cir. 2004) (emphasis added).

As to the sufficiency of the predicate acts, the Court finds that plaintiffs have stated predicate acts. As to the first predicate act, plaintiffs allege the following facts: it was a January 31, 2005 mailing of a brief by State Farm's counsel from its offices in Edwardsville, Illinois, served via U.S. mail, on the Clerk of the Illinois Supreme Court and also on *Avery* counsel in Illinois and elsewhere. As to the substance of the misrepresentation, plaintiffs allege:

> "In the January 31,2005 mailing and filing, State Farm falsely represented its support of Karmeier as consisting of 'quite modest contributions' and characterized as 'incorrect and meritless' Plaintiffs' claim that State Farm had funneled $350,000 to and peddled its enormous political influence to Karmeier's benefit. *See* State Farm's Opposition, at pp. 12-13. State Farm flatly denied 'engineering contributions' to Karmeier's campaign 'for the purpose of impacting the outcome of this case' (*see* State Farm's Opposition, at pp. 11) and downplayed the charge that it was responsible for $350,000 in direct contributions to Karmeier's campaign by suggesting that Plaintiffs' counsel had presented 'no evidence whatsoever to back up' their claim that those contributions were made by State Farm 'front groups.' *See* State Farm's Opposition, at p.11. State Farm also failed to inform the Court that its employee, Shepherd, was a member of the ICJL Executive Committee which recruited and vetted Karmeier, and through Murnane, it had organized, funded and directed Karmeier's campaign."

(Doc. 2, ¶ 102). The complaint also alleges that State Farm falsely denied that Murnane ran all phases of Karmeier's campaign. As to the second predicate act, plaintiffs allege the following: it was a September 19, 2011 mailing of a brief via U.S. mail by State Farm's counsel to the Clerk of the Illinois Supreme Court and to plaintiffs' counsel in Illinois, Louisiana, Mississippi and Tennessee. Plaintiffs allege:

"In its brief, State Farm again denied Murnane's true role in Karmeier's campaign, *see* State Farm's Response, at ¶ 27 ('Murnane was not Karmeier's campaign manager ....'), and failed to produce evidence to counter Murnane's statement that 'I'm running this campaign.'"

(Doc. 2, ¶ 105).  Further, plaintiffs allege:

"For the first time, however, State Farm conceded that Shepherd was a charter member of the Executive Committee, thus unveiling the missing [sic] connecting State Farm to the ICJL, to JUSTPAC, to Murnane, to the discarded emails, and finally, to Karmeier's campaign."

(Doc. 2, ¶ 106).   Clearly, these allegations suffice as predicate acts of mail fraud to support plaintiffs' theory that State Farm's mailings of litigation documents contained false statements that intended to mislead and conceal from the Illinois Supreme Court and plaintiffs' counsel State Farm's nature and support of Justice Karmeier.

### Conspiracy

Finally, defendants argue that the RICO conspiracy claim likewise fails as a matter of law as they have not adequately alleged the elements of proximate cause, injury, pattern, enterprise and predicate acts.

As with the 1962(c) claim, plaintiffs must allege that they were injured "by reason of" a violation of 1962.  *See* 18 U.S.C. 1962(d).  "[I]njury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO ... is not sufficient to give rise to a cause of action under 1964(c) for a violation of 1962(d)."  *Beck v. Prupis*, 529 U.S. 494, 505, 120 S.Ct. 1608 (2000).  "A RICO conspiracy plaintiff must 'allege injury from an act that is ... independently wrongful under RICO.'"  *DeGuelle*, 664 F.3d at 204.

In order to state a claim for 1962(d) conspiracy, "a plaintiff must allege that (1) defendant agreed to maintain an interest or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) the defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." *Id.* (quoting *Slaney v. In'tl Amateur Altlhetic Fed'n*, 244 F.3d 580, 600 (7th Cir. 2001)). "[T]he touchstone of liability under 1962(d) is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute." *Id.* (quoting *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998)). "The defendant need not personally commit a predicate act; rather, 'a plaintiff must allege that the defendant agreed that *someone* would commit at least two predicate acts in furtherance of the conspiracy.'" *Id.* (citing *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 784 (7th Cir. 1999)). Where a plaintiff fails to allege a claim for a violation of §1962(c), the plaintiff's § 1962(d) conspiracy claim fails if it is based on the same nucleus of operative facts as its § 1962(c) claim. *See Stachon v. United Consumers Club. Inc.*, 229 F.3d 673, 677 (7th Cir. 2000). Plaintiffs' §1962(d) claim is based on the same allegations as its § 1962(c) claim.

As the Court found above that plaintiffs have stated a claim under 18 U.S.C. § 1862(c), the Court likewise finds that plaintiffs have stated a cause of action for the RICO conspiracy claim. Plaintiffs allege that defendants violate 18 U.S.C. 1962(d) by conspiring to violate 18 U.S.C. 1962(c) by agreeing to commit at least two predicate acts. Plaintiffs' allegations are sufficient to assert that there was an

agreement between the defendants to engage in unlawful activity. The Court finds that plaintiffs have adequately pled the existence of a conspiracy between the defendants.

## Conclusion

Accordingly, the Court **DENIES** defendants' motions to dismiss (Docs. 13, 32 & 61). Also, the Court **LIFTS** the stay on the initial disclosures and discovery Further, the Court **DIRECTS** Magistrate Judge Williams to issue a Scheduling and Discovery Order.

**IT IS SO ORDERED.**

Signed this 28th day of March, 2013.

Digitally signed by
David R. Herndon
Date: 2013.03.28
14:14:02 -05'00'

**Chief Judge**
**United States District Court.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARK HALE, TODD SHADLE,
and CARLY VICKERS MORSE,
on behalf of themselves and all
others similarly situated,

Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, EDWARD
MURNANE, and WILLIAM G. SHEPHERD,

Defendants.                                    No. 12-0660-DRH

### MEMORANDUM and ORDER

HERNDON, Chief Judge:

### I. Introduction

Pending before the Court is defendant State Farm Mutual Automobile
Insurance Company's motion to alter or amend the Court's memorandum and
Order dated March 28, 2013 or, in the alternative, for certification for
interlocutory review pursuant to 28 U.S.C. § 1292(b) (Doc. 70).[1]  In a nut shell,
defendants argue that the Court should alter or amend its Order because the
Court overlooked and misapprehended controlling Seventh Circuit precedent and
that Court overlooked indisputable facts that were entitled to judicial notice and
the Court relied solely on the allegations of plaintiffs' complaint.  Plaintiffs filed an

---

[1] Defendants Murnane and Shepherd joined in the motion (Docs. 73 & 75).

opposition to the motion (Doc. 87) and defendants filed a reply (Doc. 94).  Based
on the following, the Court denies the motion.

## II. <u>Analysis</u>

A motion to alter or amend judgment filed pursuant to Rule 59(e) may only
be granted if a movant shows there was mistake of law or fact, or presents newly
discovered evidence that could not have been discovered previously.  *Harrington
v. City of* Chicago, 433 F.3d 542, 546 (7th Cir. 2006); *Romo v. Gulf Stream
Coach, Inc.*, 250 F.3d 1119, 1121 n. 3 (7th Cir. 2001)("Rule 59(e) requires that
the moving party ... 'present newly discovered evidence' or 'clearly establish a
manifest error of law or an intervening change in the controlling law.'"); Matter *of
Prince*, 85 F.3d 314 (7th Cir. 1996), *reh'g and suggestion for reh'g en banc
denied, cert. denied* 519 U.S. 1040; *Deutsch v. Burlington Northern R. Co.*, 983
F.2d 741 (7th Cir. 1993).  The Seventh Circuit has emphasized that Rule 59(e)
may not be used to relitigate issues already argued or to present new arguments
that *could have been presented* before judgment was entered.  *See, e.g., Bally
Export Corp. v. Balicar Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986); *Publishers
Resource, Inc., v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir.
1985).

Defendants contend that the Court failed to consider judicially noticeable
facts and misapprehended the legal standards for a motion to dismiss; that the
Court misapprehended the law and facts as to the *Rooker-Feldman* issue; that the
Court overlooked controlling Seventh Circuit law when it found that plaintiffs'

claims were not time-barred; that the Court overlooked judicially noticeable facts establishing the absence of causation regarding the RICO claims and that the Court misapprehended the legal principles as to the RICO predicate act. Plaintiffs oppose the motion asserting that defendants, in both the motion to dismiss and the motion to alter or amend, repeatedly attempt to mischaracterize plaintiffs' theories and factual allegations. Plaintiffs also assert that defendants are repeating and rehashing previous arguments that have been rejected. The Court agrees with plaintiffs.

After review of the record and case law *again*, the Court finds that defendants neither presented newly discovered evidence nor identified a manifest error of law of fact. The Court did not overlook judicially noticeable facts, as defendant suggests. Defendants' motion merely takes umbrage with the Court's ruling and rehashes old arguments. In rendering this Order and the forty-three page Memorandum and Order denying the motions to dismiss, the Court examined the evidence and case law submitted by the parties. The Court remains convinced of the correctness of its position. Thus, the Court rejects defendants' motion to alter or amend its March 28, 2013 Memorandum and Order. Further, the Court is not persuaded that there are controlling issues of law or that an appeal of this will materially advance the ultimate termination of this litigation.

Section 1292(b) states that when a district court judge believes that an order for an interlocutory appeal involves 1) a controlling question of law, 2) to which there is a substantial ground for difference of opinion, and 3) an immediate

appeal from the order may materially advance the ultimate termination of the litigation, then the district judge may certify the request for such an appeal. Thereafter, the Court of Appeals has discretion in permitting an appeal from such an order. *See* 28 U.S.C. § 1292(b); *In re Text Messaging Antitrust Litigation,* 630 F.3d 622, 624 (7th Cir. 2010) (stating that the district court must give permission to allow an interlocutory appeal before the Court of Appeals makes a final decision about an immediate appeal).    The criteria under 1292(b) are "conjunctive, not disjunctive."*Ahrenholz v. Bd. Of Trs.,* 219 F.3d 674, 676 (7th Cir. 2000).  Further, a request for an interlocutory appeal must be filed "within a *reasonable time* after the order sought to be appealed." *Id.* at 675–76 (emphasis in original).

As noted above, an appeal under 1292(b) must involve a controlling question of law as to which there is substantial ground for difference of opinion.[1] Defendant has failed to demonstrate that these are controlling questions of law.  A "question of law" under section 1292(b) must be a "pure" question of law, "something the court of appeals could decide quickly and cleanly without having to study the record," such as "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine ..." *Id.* at 676–677. Application of a legal standard is a question of law. *In re Text Messaging Antitrust Litigation,* 630 F.3d at 626. However, the determination here does not

---

[1]This involves three separate issues. (1) the question must be *controlling;* (2) the question must be a question of *law;* and (3) the question must be a question to which there is substantial ground for difference of opinion.

involve pure questions of law, but will require the Seventh Circuit to look at evidence, facts and affidavits.

Judicial efficiency is an underlying principle behind section 1292(b). Certification by a district court for an interlocutory appeal may be justified upon the basis that it will expedite litigation. *Matter of Hamilton*, 122 F.3d 13, 15 (7th Cir. 1997) ("[N]o basis has been laid for thinking that answering the former will expedite the litigation."). Defendants provide no evidence that an immediate appeal from the Order would materially advance the termination of this litigation and the Court finds no evidence that approving defendants' motion would expedite this litigation. Further, the Court does not find that exceptional circumstances exist to allow the interlocutory appeal. As pled in the complaint and as stated numerous times by the Court, this case does not seek a review of *Avery*; rather it is a new and different cause of action based on entirely different conduct. Defendants' arguments miss the mark. Therefore, this Court does not find that an immediate appeal would materially advance the litigation.

### III. Conclusion

Accordingly, the Court **DENIES** defendant State Farm Mutual Automobile Insurance Company's motion to alter or amend the Court's Memorandum and Order dated March 28, 2013 or, in the alternative, for certification for interlocutory review pursuant to 28 U.S.C. § 1292(b) (Doc. 70). Further, the Court **LIFTS** the temporary discovery stay Order (Doc. 132) and **FINDS as moot** defendant's appeal of Magistrate Judge's ruling denying motion to stay discovery

(Doc. 126).   Again, the Court **DIRECTS** Magistrate Judge Williams to issue a

Scheduling and Discovery Order.

      **IT IS SO ORDERED.**

      Signed this 4th day of December, 2013.

David R.
Herndon
2013.12.04
14:59:11 -06'00'

**Chief Judge**
**United States District Court**.

## **PROOF OF SERVICE**

I hereby certify that on  December 17, 2013, pursuant to the procedures in the Court's ECF User Manual for electronically filing case-initiating documents, I emailed a PDF copy of the foregoing to the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit, at USCA7_Clerk@ca7.uscourts.gov.

I further certify that on December 17, 2013, I sent a copy of the foregoing

via FedEx to:

Chief Judge David R. Herndon
United States District Court
Southern District of Illinois
750 Missouri Avenue
East St. Louis, IL 62201

and via U.S. Mail and e-mail to:

William Gordon Ball, Esq.
7001 Old Kent Drive
Knoxville, TN 37919
gball@gordonball.com

Elizabeth J. Cabraser, Esq.
Richard M. Heimann
Robert J. Nelson, Esq.
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
ecabraser@lchb.com
rheimann@lchb.com
rnelson@lchb.com

John W.  (Don) Barrett, Esq.
Barrett Law Group, P.A.
404 Court Square
P.O. Box 927
Lexington, MS 39095
dbarrett@barrettlawgroup.com

Patrick W. Pendley, Esq., Jessica A. Perez
Nicholas Rockforte,
Pendley, Baudin & Coffin, L.L.P.
Post Office Drawer 71
24110 Eden Street
Plaquemine, LA 70765
pwpendley@pbclawfirm.com
jperez@pbclawfirm.com
nrockforte@pbclawfirm.com

Charles F. Barrett, Esq.
Charles Barrett, P.C.
6518 Highway 100
Suite 210
Nashville, TN 37205
charles@cfbfirm.com

Tom Thrash
Thrash Law Firm, P.A.
1101 Garland Street
Little Rock, AR 72201
tomthrash@sbcglobal.net

Steven A. Martino, Richard Taylor
W. Lloyd Copeland
Taylor Martino, P.C.
51 Saint Joseph Street
Mobile, AL 36602
richardtaylor@taylormartino.com
stevemartino@taylormartino.com
lloyd@taylormartino.com

Robert A. Clifford, Robert P. Sheridan
Michael S. Krzak, Shannon M. McNulty
George S. Bellas
Clifford Law Offices
120 North LaSalle Street, 31st Floor
Chicago, IL 60602
rac@cliffordlaw.com
rps@cliffordlaw.com
msk@cliffordlaw.com
smm@cliffordlaw.com
george@bellas-wachowski.com

Laura Oberkfell
Russel K. Scott
Greensfelder, Hemker & Gale, P.C.
12 Wolf Creek Drive, Suite 100
Belleville, IL 62226
lch@greensfelder.com
rks@greensfelder.com

Anthony L. Martin
Sandberg, Phoenix et al. – St. Louis
600 Washington Avenue, 15th Floor
St. Louis, MO 63101
amartin@sandbergphoenix.com

1261815_1

Brent W. Landau
Hasufeld, LLC
1604 Locust Street, 2nd Floor
Philadelphia, PA 19103
blandau@hausfeldllp.com

David T. Brown
Steven P. Blonder
Much Shelist, P.C.
191 North Wacker
Suite 1800
Chicago, IL 60606-2000
dbrown@muchshelist.com
sblonder@muchshelist.com

Richard J. O'Brien, Scott M. Berliant
David Gavin Jorgensen
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
robrien@sidley.com
sberliant@sidley.com
djorgensen@sidley.com

Sidney W. Jackson, III
Jackson Foster, et al.
107 Saint Francis Street, Suite 1704
P.O. Box 2225
Mobile, AL 36602
sid@jacksonfosterlaw.com

s/ J. Timothy Eaton